# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51994-1-II |
| Respondent, | |
| v. | |
| RODNEY T. FRANCK, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — A jury convicted Rodney Franck of two counts of assault in the second degree following an incident when a group attacked three people on a beach. Franck argues that the trial court erred (1) by denying his CrR 8.3(b) motions to dismiss, claiming he was materially prejudiced when the court granted three trial continuances because of government misconduct and which continuances violated the time for trial rule and his right to effective assistance of counsel. Franck also argues that (2) he received ineffective assistance of counsel because his counsel stipulated to the admission of a video that depicted him in restraints and contained improper opinions of guilt and improper blood opinion testimony. Franck further argues that (3) his sentencing score was not properly proven by the State and defense counsel was deficient for stipulating to his offender score, (4) the trial court imposed an unconstitutional and overly broad condition of community custody requiring that he consent to Department of Corrections (DOC) home visits, and (5) the trial court imposed a $100 DNA collection fee when he previously provided a DNA sample.

We hold that (1) the trial court did not err by denying Franck's CrR 8.3(b) motions to dismiss because there was no government misconduct, good cause existed for the three trial continuances, and Franck was not prejudiced, (2) Franck has not shown that counsel was deficient on this record, and thus, his claim of ineffective assistance of counsel fails, (3) the State failed to prove Franck's criminal history as required, (4) the condition requiring that he consent to DOC home visits is overly broad, and (5) the record is inadequate to determine whether the trial court's imposition of a $100 DNA collection fee was proper. We affirm the convictions but vacate his sentence, and remand for resentencing. At resentencing, the trial court should ensure that any community custody condition regarding DOC home visits complies with *Cornwell*[1] and that a DNA collection fee not be imposed unless the State can prove Franck has not previously provided a DNA sample.

## FACTS

### I. JULY 4, 2015

On July 4, 2015, Amy Mehas, Richard Mehas, Karen Finlay, and Daniel Finlay were walking on the beach watching a firework show. As they were walking up the hill to go back to their beach house, some people blocked their path and would not let them pass. A fight broke out with a group of about ten to fifteen people attacking Mr. Finlay, Mr. Mehas, and Mrs. Mehas. Mrs. Mehas was pushed down a hill, and the group hit and kicked Mr. Finlay and Mr. Mehas for about five minutes. Mr. Finlay was kneed in the face.

---

[1] *State v. Cornwell*, 190 Wn.2d 296, 412 P.3d 1265 (2018).

Law enforcement arrived on the scene after the fight ended, accompanied by a film crew filming for an episode titled "Brawl on the Beach" for a show called "Rugged Justice" on Animal Planet. Officers were able to interview the victims, as well as Rodney Franck, who was wearing a blue shirt and gray sweat pants. The officers could immediately see what appeared to be blood on Franck's sweat pants near his right knee area. Franck told them the blood was from a friend of his from earlier, but the blood looked relatively fresh. Franck denied any involvement with the altercation on the beach. Franck was not arrested, but he received a citation. The State charged Franck with one count of assault in the second degree.

## II. PROCEDURAL HISTORY

Franck was first arraigned on October 30, 2015, on one charge of assault in the second degree. Throughout the next 2.5 years before trial commenced on May 29, 2018, there were a significant number of continuances; many of them were requested by Franck. Franck bases his arguments on appeal largely on three continuances between November 21, 2017 and May 29, 2018. The first continuance was due to the court's trial schedule, the second continuance was due to the unavailability of two of the State's material witnesses, and the third continuance was requested by defense counsel to investigate late discovery provided by the State. The trial court granted all three continuances.

### A. THE FIRST CONTINUANCE

On November 21, 2017, the State moved to amend the information a third time to add a new felony charge of second degree assault involving a new victim, Mr. Mehas, which motion was

heard seven business days before the December 13 trial date.[2] The State told the trial court its reason for the amendment was that plea negotiations had failed and the case was proceeding to trial. The allowable time for trial was due to expire on December 21, 2017. Franck filed a CrR 8.3(b) motion to dismiss on November 28.

The trial court heard argument on December 1 and continued the case due to the court's schedule. This county's superior court had only one judge. Another trial involving homicide by abuse relating to an in-custody defendant was also scheduled for the same day. The trial court was displeased that the State wanted to amend the information so late, but it ruled that there was no prejudice to Franck because the trial would have been continued anyway. The trial court did not make any explicit ruling regarding the pending CrR 8.3(b) motion to dismiss, and defense counsel said, "Your Honor, my pleadings had an argument in the alternative to dismiss. Obviously, that needs to be more properly noted up as an 8.3 [motion], so – just so everyone is aware, we will probably be doing that sometime in the next thirty days." Verbatim Report of Proceedings (VRP) (Dec. 1, 2017) at 146. The court continued Franck's trial from December 13 to January 3, 2018.

B. THE SECOND CONTINUANCE

Franck filed a CrR 8.3(c) motion to dismiss on December 13, 2017. The State also filed a motion for a continuance on December 29, 2017, due to the unavailability of two of the State's material witnesses. These two witnesses were care providers for a dying mother who was in hospice care and who could not be left alone. Franck objected to a continuance. The trial court

---

[2] The State amended the information two times before to add counts of bail jumping: on August 11, 2017 and on September 8, 2017. Those charges were severed from these charges and are not included in this appeal.

4

found that both of these witnesses were material to the State's case and that good cause existed for a continuance due to their unavailability, granted the continuance, and reset the trial from January 3 to February 14.

C. THE THIRD CONTINUANCE

On February 2, 2018, allegations were filed against the State's medical expert, Dr. Mark Waliser. On February 9, the State learned of the information in a phone call with Dr. Waliser, who informed the State that he had just received a letter regarding his medical license. The State obtained a copy of the information and sent it to defense counsel the same day it received the information. On that same day, the State disclosed that several State witnesses had criminal histories involving crimes of dishonesty, which information had not previously been provided to the defense.

On February 12, Franck filed another CrR 8.3(b) motion to dismiss based on government misconduct. Franck argued that the charges should be dismissed because of the State's late disclosures described above. At the hearing, defense counsel stated that if the court was going to deny the CrR 8.3(b) motion to dismiss, that counsel would request a trial continuance in order to investigate the allegations against Dr. Waliser. The State objected to the continuance. Defense counsel also stated that he would need a continuance to obtain certified copies of the judgment and sentence regarding the criminal histories of the State's witnesses, and to investigate the facts associated with their histories. The State then stipulated to the criminal histories being admitted. Defense counsel acknowledged to the trial court that the State had been prompt and diligent in providing the late discovery. The court found that Franck would not be prejudiced and granted his

request for a continuance and continued the trial from February 14 to May 29. Franck signed a waiver of his right to speedy trial.

D. THE TRIAL

Franck's trial began on May 29, 2018, and lasted for two days. The State's witnesses testified to the above facts regarding the incident. Mr. Mehas testified that Franck was one of the "perpetrators" of the altercation, and that he witnessed Franck kneeing Mr. Finlay in the face. VRP (May 29, 2018) at 372-73.

The parties stipulated to the admission of a video taken on the evening of the incident. As mentioned above, a film crew from Animal Planet was riding with law enforcement the evening of the incident, and they filmed an episode for a show called "Rugged Justice." A portion of the video showed the blurred faces of Franck and the victims, and showed several officers speaking to Franck and the victims. Franck is first seen in the video when the officers run up to him and ask him to stop walking. Franck is walking alone and smoking a cigarette. The officers ask him some questions and pat him down, and Franck's bloody sweatpants are visible. Franck is restrained briefly, but he is never placed in handcuffs. Franck's face is blurred throughout the video. During the video, Franck appears compliant to the officer's requests of him. At one point, Mr. Mehas says, "they're guilty as hell," and an unidentified male voice says "One of the ones. For sure. Obvious." Ex. 9; VRP (May 29, 2018) at 404.

The jury returned a verdict of guilty on both counts.

E. SENTENCING

Both parties filed sentencing memorandums. At sentencing, the State provided a criminal history summary and recommended a sentence on the high end of the standard range of 22-29

months for each count, and 18 months of community custody on each count. The State provided no documentation of Franck's alleged criminal history. In his response to the State's recommendation, defense counsel stated, "Defense agrees with the standard range calculations of the State." Clerk's Papers (CP) at 216. The trial court sentenced Franck to 29 consecutive months in prison for each count—the maximum sentence allowed in the standard range for a person with an offender score of 5. It also sentenced Franck to 18 months of community custody and imposed community custody conditions. One of these conditions states, "Must consent to DOC home visits to monitor compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of residence, in which the offender lives or has exclusive/joint control/access." CP at 230.

Before it imposed legal financial obligations (LFOs), the trial court did not review any prior determination of income or inquire about Franck's current or future employment, and merely said in reference to the LFOs that "[t]hey're waived." VRP (June 15, 2018) at 284. However, it imposed a $500 crime victim penalty assessment fee and a $100 DNA collection fee.

Franck appeals his convictions and sentence.

ANALYSIS

Franck argues that the trial court erred (1) by denying his CrR 8.3(b) motions to dismiss, claiming he was materially prejudiced when the court granted three trial continuances resulting from government misconduct and which violated the time for trial rule and his right to effective assistance of counsel. Franck also argues that (2) he received ineffective assistance of counsel because his counsel stipulated to the admission of a video that depicted him in restraints and contained improper opinions of guilt and improper blood opinion testimony. Franck further argues

that (3) his sentencing score was not properly proven by the State and defense counsel was deficient for stipulating to his offender score, (4) the trial court imposed an unconstitutional and overly broad condition of community custody requiring that he consent to DOC home visits, and (5) the trial court improperly imposed a $100 DNA collection fee when he previously provided a DNA sample.

We hold that (1) the trial court did not err by denying Franck's CrR 8.3(b) motions to dismiss because there was no government misconduct, good cause existed for the three trial continuances, and Franck was not prejudiced, (2) Franck has not shown that counsel was deficient on this record, and thus, his claim of ineffective assistance of counsel fails, (3) the State failed to prove Franck's criminal history as required, (4) the condition requiring that he consent to DOC home visits is unconstitutionally overly broad, and (5) the record is inadequate to determine whether the trial court's imposition of a $100 DNA collection fee was proper. Thus, we affirm Franck's convictions and remand for resentencing.

## I. CrR 8.3(b)–Motions To Dismiss–Government Misconduct

Franck first argues that dismissal of the charges was warranted under CrR 8.3(b) and the trial court erred by denying his motions to dismiss. He argues that the three trial continuances granted by the court between December 1, 2017 and May 29, 2018, resulted from government misconduct and prejudiced the time for trial rule under CrR 3.3 and his right to effective assistance of counsel. We disagree and hold that the trial court did not err.

We review a trial court's decision on a CrR 8.3(b) motion to dismiss for a manifest abuse of discretion. *State v. Martinez*, 121 Wn. App. 21, 30, 86 P.3d 1210 (2004). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds,

8

or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). A decision is manifestly unreasonable if the trial court, applying the correct legal standard to the facts of the case, adopts a view "'that no reasonable person would take,'" and a decision is based on untenable grounds "'if it rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *Martinez*, 121 Wn. App. at 30 (internal quotation marks omitted) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

> CrR 8.3(b) provides that
>
> [t]he court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

In order for a court to dismiss criminal charges under CrR 8.3(b), "the defendant must show by a preponderance of the evidence both (1) arbitrary action or governmental misconduct, and (2) actual prejudice affecting the defendant's right to a fair trial." *Martinez*, 121 Wn. App. at 29. The government's misconduct does not need to be "'of an evil or dishonest nature; simple mismanagement is sufficient.'" *State v. Michielli*, 132 Wn.2d 229, 239-40, 937 P.2d 587 (1997) (emphasis omitted) (quoting *Blackwell*, 120 Wn.2d at 831). Dismissal is "an extraordinary remedy used only in truly egregious cases." *State v. Flinn*, 119 Wn. App. 232, 247, 80 P.3d 171 (2003), *aff'd*, 154 Wn.2d 193.

The mere possibility of prejudice resulting from governmental misconduct is not sufficient to meet the burden of showing actual prejudice. *State v. Norby*, 122 Wn.2d 258, 264, 858 P.2d 210 (1993). The alleged governmental misconduct must have "materially affected the defendant's right to a fair trial." *State v. Brooks*, 149 Wn. App. 373, 389, 203 P.3d 397 (2009).

A trial court has broad discretion to grant a trial continuance. "[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). We review a trial court's decision to grant a trial continuance for an abuse of discretion. *Downing*, 151 Wn.2d at 272.

CrR 3.3(b)(2) establishes that defendants who are not detained must be brought to trial within 90 days of their commencement date. The initial commencement date is the date of arraignment, but it can be reset if one of a number of events occurs, including a trial continuance. *See* CrR 3.3(c). Further, a party or the court may move for a continuance.

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. The motion must be made before the time for trial has expired. The court must state on the record or in writing the reasons for the continuance. The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay.

CrR 3.3(f)(2).

A. THE FIRST CONTINUANCE

Franck argues that the trial court erred by continuing the trial date from December 13, 2017, to January 3, 2018, due to the court's trial schedule, claiming that the continuance was caused by the State's late motion to amend the information to add a new felony charge. We disagree because the State's late motion to amend did not cause the trial continuance; the continuance resulted from a conflict in the judge's trial schedule, and the trial court has broad discretion to order a continuance as required in the administration of justice. *See Downing*, 151 Wn.2d at 272. Thus, we hold that the trial court did not abuse its discretion by continuing the trial.

On November 21, 2017, the State filed a motion to amend the information to add a new felony charge—which motion was heard seven business days before the December 13 trial was scheduled to start. Before ruling on the State's motion to amend, the trial court informed the parties that the court had already determined that it would need to continue the trial for up to 30 days due to the court's schedule. The judge was the sole judge for the superior court and had another trial set on the same day involving homicide by abuse related to an in-custody defendant, which case the court was required to try before Franck's case.

The trial court determined that Franck would not be prejudiced by the continuance as the trial would have been continued anyway due to another trial being scheduled on the same day. However, the court also stated that it would not have granted the State's motion to amend if the trial had proceeded as currently set for December 13. Although Franck had filed a CrR 8.3(b) motion to dismiss, the trial court did not rule on the motion as Franck's attorney told the court that he would be filing another CrR 8.3 motion to dismiss after the hearing. Because the court had a schedule conflict, the trial was required to be continued in the administration of justice and Franck was not prejudiced, we hold that the trial court did not abuse its discretion by continuing the December 13 trial date.

B. THE SECOND CONTINUANCE

Franck next argues that the trial court erred by granting a second continuance from January 3 to February 14, over his objection, due to the unavailability of two of the State's material witnesses. We disagree.

As discussed above, trial court has broad discretion to continue a trial. *Downing*, 151 Wn.2d at 272. The unavailability of a material witness at trial is a valid reason to continue a trial.

11

*State v. Carson*, 128 Wn.2d 805, 814, 912 P.2d 1016 (1996); *Jones*, 117 Wn. App. 721, 729, 72 P.3d 1110 (2003).

Here, one of the State's witnesses stated that her mother was in hospice care and was not expected to live, and that neither she nor her husband, who was also one of the victims of the charged assault, were available for trial as set on January 3. The State noted that by this time, the trial had already been continued numerous times over the past several years, primarily at Franck's request, which had resulted in great inconvenience to the State and the witnesses. The trial court properly determined that there were compelling circumstances requiring a continuance and that Franck was not prejudiced. The trial court found that both of these witnesses were material to the State's case, the wife's mother was in hospice care and required both of the witnesses' assistance, and the mother's hospice care facility was not located near the courthouse.[3] Given these compelling circumstances, we hold that the trial court did not abuse its discretion by granting a continuance which was required in the administration of justice.

C. THE THIRD CONTINUANCE

Franck next argues that the trial court erred by granting a third continuance from February 14 to May 29 at the request of defense counsel and by denying his CrR 8.3(b) motion to dismiss for government misconduct based on the State's discovery violations. Franck claims that the State's late disclosure of allegations, related to its medical expert and the criminal history of the State's witnesses, constitute discovery violations under CrR 4.7 which resulted in the trial court

---

[3] Franck does not challenge these findings and thus, they are verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011).

granting a third continuance, violating the time for trial rule under CrR 3.3 and his right to effective assistance of counsel. We disagree.

As discussed above, the time for trial date can be reset under CrR 3.3(c) based on a trial continuance. A court has broad discretion under CrR 3.3(f) to continue a trial when a defendant is not prejudiced and a continuance is required in the administration of justice. *Downing*, 151 Wn.2d at 272. The State also has the continuing obligation to provide "any material or information within the prosecuting attorney's knowledge which tends to negate defendant's guilt as to the offense charged," unless it is covered under a protective order. CrR 4.7(a)(3); *see also Salgado-Mendoza*, 189 Wn.2d, 420, 434, 403 P.3d 45 (2017). A defendant has the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Here, on February 9, 2018, the State first learned of the information regarding allegations related to Dr. Waliser's medical license. Dr. Waliser had just received a notice from the Washington Department of Health that his medical license was suspended, and he had just informed the State about the letter during a phone interview. The State sent the certified copy of the charges against Dr. Waliser to defense counsel on the same day it received the information. That same day, the State also disclosed that several State witnesses had criminal histories involving crimes of dishonesty, which information had not been provided to the defense.

Franck then filed another CrR 8.3(b) motion to dismiss alleging government misconduct due to the late disclosures. At the hearing, defense counsel conceded that the State acted promptly and diligently by disclosing the information regarding Dr. Waliser's license on the same day that

the State had received it. Defense counsel then asked the trial court to continue the trial in order for him to investigate Dr. Waliser's charges, which continuance the State objected to.

Defense counsel also claimed that he needed additional time and a continuance to obtain certified copies of the judgments and sentences for the recently disclosed convictions of the State's witnesses and to research the facts underlying them. The State then stipulated to the disclosed criminal histories. The trial court concluded that there was no prejudice to Franck from the late disclosure of this information and that the defense could properly inquire at trial as to the facts of these convictions to impeach the witnesses. Because there was no prejudice to Franck, the trial court granted counsel's request to continue the trial and reset the trial from February 14 to May 29. Franck also signed a waiver of his right to a speedy trial.

The trial court's order granting a third continuance and resetting trial to May 29 did not violate the time for trial rule because under CrR 3.3(c), the commencement date for trial is reset when the defendant signs a waiver of his rights. Further, the trial court has broad discretion under CrR 3.3(f) to grant a continuance where there is no prejudice to a defendant and the administration of justice requires a continuance. And there was no CrR 4.7 violation because the State had promptly and diligently provided the new information to the defense.

Franck also fails to establish prejudice. His counsel requested this third continuance to conduct further investigation into the new allegations involving the State's medical witness. His counsel also had the opportunity at trial to impeach the State's witnesses with the facts related to the recently disclosed criminal histories. The trial court properly concluded that there was no prejudice to Franck by the continuance and that the administration of justice required a continuance under CrR 3.3(f).

14

Because the State did not violate CrR 4.7, there was no government misconduct related to these late disclosures. Nor does Franck show how his right to effective assistance of counsel was violated by a continuance. Because there was no basis for the trial court to grant the motion to dismiss based on government misconduct, we hold that the trial court did not abuse its discretion by denying his CrR 8.3(b) motion to dismiss.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Franck argues that his trial counsel was ineffective because he stipulated to the "Brawl on the Beach" video. Franck argues that (1) the video depicts him being restrained and in law enforcement custody, thus infringing on his right to a fair trial and the presumption of innocence, (2) the video contains improper opinions of guilt by the officer saying, "One of the ones. For sure. Obvious," and assertions of unsubstantiated facts, when Mr. Mehas says, "They're guilty as hell and where I am from they'll get jail time," and (3) the blood opinion testimony was unreliable. Because we can conceive of legitimate strategic or tactical reasons why counsel stipulated to admission of the video, on this record, Franck has failed to show that counsel was deficient. Thus, we hold that his claim fails.

A claim that counsel was ineffective is a mixed question of law and fact that this court reviews de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015) (citing *Strickland*, 466 U.S. at 698). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland*, 466 U.S. at 685-86; WASH. CONST. art. 1, § 22. In *Strickland*, the United States Supreme Court set forth a two-prong inquiry for reversal of a criminal conviction based on ineffective assistance of counsel. *Strickland*, 466 U.S. at 687 Under the *Strickland* test, the defendant bears the burden to

show (1) counsel's performance was deficient and (2) the attorney's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Strickland*, 466 U.S. at 700.

We review de novo whether counsel's performance was deficient. *See Jones*, 183 Wn.2d at 338. Representation is deficient if it falls "below an objective standard of reasonableness," given all of the circumstances. *Strickland*, 466 U.S. at 688. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Because we presume that counsel's performance was effective, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). "[W]hen 'the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record.'" *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018) (quoting *McFarland*, 127 Wn.2d at 335). "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed [and heard] concurrently with the direct appeal." *McFarland*, 127 Wn.2d at 335, (citing Wash. State Bar Ass'n, *Appellate Practice Desk Book* § 32.2(3)(c) (2d ed. 1993) at 32-6).

Because we can conceive of legitimate strategic or tactical reasons that are reasonable why counsel stipulated to the admission of the video, and there is no information in the record as to why counsel stipulated, Franck has failed to show that counsel was deficient. The video aided defense counsel in cross-examination of key witnesses, in the limited identification of Franck by the victims, and it showed Franck denying culpability.

Franck has failed to show, on this record, that his counsel's decision to stipulate to the video was not strategic. If Franck wishes to rely on evidence outside the record to support his claim, his remedy is to file a personal restraint petition. *See McFarland*, 127 Wash.2d at 335. Thus, because Franck fails to show that his counsel was deficient, we hold that his claim of ineffective assistance fails.

### III. OFFENDER SCORE

Franck makes several arguments regarding his offender score, including that neither he nor his attorney agreed to the State's articulation of his criminal history. We hold the State failed to prove Franck's criminal history, and thus, a remand is necessary.

We review the calculation of an offender score de novo. *State v. Rodriguez*, 183 Wn. App. 947, 953, 335 P.3d 448 (2014). "[I]llegal or erroneous sentences may be challenged for the first time on appeal." *State v. Crow*, 8 Wn. App. 2d 480, 512, 438 P.3d 541 (2019), *review denied*, 193 Wn.2d 1038.

The State has the burden to prove the existence of prior convictions by a preponderance of the evidence, and "[b]are assertions, unsupported by evidence, do not satisfy the State's burden to prove the existence of a prior conviction." *Crow*, 8 Wn. App. 2d at 513. When calculating an offender score, the court may not rely on any more information than what is "'admitted by the plea

17

agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing.'" *Crow*, 8 Wn. App. 2d at 512-13 (quoting *State v. Hunley*, 175 Wn.2d 901, 909, 287 P.3d 584 (2012)).

"The best evidence of a prior conviction is a certified copy of the judgment." *Crow*, 8 Wn. App. 2d at 513. A defendant may affirmatively acknowledge his criminal history and obviate the need for the State to produce evidence. *Hunley*, 175 Wn.2d at 912. We vacate a defendant's sentence when the State fails to provide sufficient evidence of prior convictions. *Crow*, 8 Wn. App.2d at 513.

Here, the State orally advised the court of Franck's criminal history and stated that his offender score was a five. It then included a chart of Franck's criminal history in its sentencing memorandum. Franck did not affirmatively acknowledge his criminal history, and the State failed to provide any documentation of Franck's criminal history. Because the State failed to meet its burden of proving Franck's criminal history, we vacate Franck's sentence.

## IV. CONDITION REQUIRING DOC HOME VISITS

Preliminarily, the State argues that the condition requiring Franck's consent to DOC home visits issue is not ripe for review because the condition is not effective until his release and thus, Franck has not yet been harmed. The State alternatively argues that the trial court did not err by imposing this condition because it does not allow unfettered searches, and thus, the condition is not overly broad and is constitutional. We hold that the issue is ripe for review and further hold that the challenged condition is overly broad.

### A. RIPENESS

A preenforcement challenge to a community custody condition is ripe for review if "'the issues raised are primarily legal, do not require further factual development, and the challenged

action is final.'" *State v. Cates,* 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (internal quotation marks omitted) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010)). "[W]e must consider the hardship to the petitioner[] if we refused to review [the] challenge on direct appeal." *Sanchez Valencia*, 169 Wn.2d at 789.

Our Supreme Court has repeatedly cited to *U.S. v. Loy*,[4] a third circuit case, in its analysis for ripeness. *See Cates*, 183 Wn.2d at 535; *see also Sanchez Valencia*, 169 Wn.2d at 788-89; *see also State v. Bahl*, 164 Wn.2d 739, 746-52, 193 P.3d 678 (2008). In *Loy*, the court stated that "'the federal courts have uniformly permitted defendants sentenced to probation to challenge the validity of their probation conditions on direct appeal.'" *U.S. v. Loy*, 237 F.3d at 257 (quoting *U.S. v. Stine*, 646 F.2d 839, 846 n.16 (3rd Cir. 1981)).

In *Cates*, the Supreme Court declined to decide the merits of the case because it determined the issue was not ripe for review. *Cates*, 183 Wn.2d at 536. The defendant did not challenge the actual language of the condition imposed, and the court determined "[t]he condition as written d[id] not authorize any searches." *Cates*, 183 Wn.2d at 535. Also, the condition was not binding because it was an oral statement, so the court held it could not form the basis for a facial challenge. *Cates*, 183 Wn.2d at 535. Finally, the court determined that the risk of hardship was insufficient, distinguishing the case from others where the risk of hardship was significant. *Cates*, 183 Wn.2d at 535-36.

In contrast, our Supreme Court in *Sanchez Valencia* and *State v. Bahl* found that the specific community custody provisions at issue were ripe for review. In *Sanchez Valencia*, the

---

[4] *U.S. v. Loy*, 237 F.3d 251 (3rd Cir. 2001).

court found the issue (1) was primarily legal, (2) "the question of whether the condition is unconstitutionally vague does not require further factual development," and (3) there was sufficient hardship because, immediately upon release from prison, the defendants would be restrained in their actions by the community custody conditions. *Sanchez Valencia*, 169 Wn.2d at 788-90. In *Bahl*, the defendant challenged the condition at issue as being overly broad and vague. *Bahl*, 164 Wn.2d at 743. The court in that case held that the issue was ripe—even though the defendant was not yet released from prison—because the conditions would "immediately restrict him" upon release, and because the issue was "purely legal," not factual. *Bahl*, 164 Wn.2d at 751-52.

Here, the issue raised is primarily legal because it involves a constitutional claim—Franck is not arguing that any particular search is illegal; rather, he is arguing that the scope of the condition is excessively broad in violation of article 1, section 7 of the Washington State Constitution. Second, the issue does not require further factual development because it is not a fact-specific issue—it is a legal issue regarding Franck's constitutional rights. Third, the issue is final because the condition at issue is set forth and attached to the trial court's judgment and sentence. Finally, failure to consider the issue on direct appeal will create a hardship for Franck because the condition will be imposed as soon as he is released from prison, leaving him open to the requirement that he must consent to DOC home visits.

Because the issue is primarily legal, does not require further factual development, and is final, and because failure to consider this issue would create a hardship for Franck, we hold that the issue is ripe for review and we decide the issue on the merits below.

B.  DOC HOME SEARCHES

Franck challenges as overly broad the following community custody provision ordered by the trial court:

> Must consent to DOC home visits to monitor compliance with supervision.  Home visits include access for the purposes of visual inspection of all areas of residence, in which the offender lives or has exclusive/joint control/ access.

CP at 230.  We agree that the condition is overly broad, and at resentencing, the court must comply with *Cornwell* as explained below.

Issues of constitutional law are reviewed de novo.  *State v. Cornwell*, 190 Wn.2d, 296, 300, 412 P.3d 1265 (2018).  Article 1, section 7 states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."  WASH. CONST. art. 1, § 7.  Regarding the right to privacy, article 1, section 7 provides broader protections than the Fourth Amendment, as it "'clearly recognizes an individual's right to privacy with no express limitations.'"  *State v. Ladson*, 138 Wn.2d 343, 348, 979 P.2d 833 (1999) (internal quotation marks omitted) (quoting *State v. Young*, 123 Wn.2d 173, 180, 867 P.2d 593 (1994)).  Warrantless searches are generally per se unreasonable.  *Ladson*, 138 Wn.2d at 349.  They are, however, "subject to 'a few jealously and carefully drawn exceptions.'"  *Cornwell*, 190 Wn.2d at 301 (internal quotation marks omitted) (quoting *Ladson*, 138 Wn.2d at 349).

However, defendants on probation are not entitled to the full protection of article 1, section 7 because they are persons whom a court has sentenced to confinement but who are "'serving their time outside the prison walls.'"  *Cornwell*, 190 Wn.2d at 301-02 (internal quotation marks omitted) (quoting *State v. Olsen*, 189 Wn.2d 118, 124, 399 P.3d 1141 (2017)).  "Accordingly, it is constitutionally permissible for a [community correctional officer] to search an

individual based only on a 'well-founded or reasonable suspicion of a probation violation,' rather than a warrant supported by probable cause." *Cornwell*, 190 Wn.2d at 302 (quoting *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009)).

This exception is codified in RCW 9.94A.631, which reads, in relevant part, "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer [CCO] may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." This does not mean that probationers "forfeit all expectations of privacy in exchange for their release into the community." *Cornwell*, 190 Wn.2d at 303. "Individuals' privacy interest can be reduced 'only to the extent necessitated by the legitimate demands of the operation of the [community supervision] process.'" *Cornwell*, 190 Wn.2d at 303-04 (alteration in original) (internal quotation marks omitted) (quoting *Olsen*, 189 Wn.2d at 125).

"First, a CCO must have 'reasonable cause to believe' a probation violation has occurred before conducting a search at the expense of the individual's privacy." *Cornwell*, 190 Wn.2d at 304 (citing RCW 9.94A.631(1)). There must be a nexus between the property searched and the suspected probation violation. *Cornwell*, 190 Wn.2d at 304, 306. "Second, the individual's privacy interest is diminished only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search." *Cornwell*, 190 Wn.2d at 304.

Applying *Cornwell*, the condition here is overly broad because it does not include any language as required under *Cornwell*. Under *Cornwell*, DOC has the authority to search a probationer's home only if the CCO has a reasonable suspicion to believe a probation violation by the probationer has occurred. *Cornwell*, 190 Wn.2d at 302. Further, DOC must search the home

only to the extent necessary "for the [DOC] to monitor compliance with the particular probation condition that gave rise to the search." *Cornwell*, 190 Wn.2d at 304. And there also must be a nexus between the property searched and the suspected probation violation. *Cornwell*, 190 Wn.2d at 304, 306. Thus, we hold that because the language stated in the condition does not comply with *Cornwell*, we hold that it is overly broad and unconstitutional.

## V. DNA COLLECTION FEE

Franck argues that the trial court erred by imposing a $100 DNA collection fee because his DNA was collected after he was convicted in 2014 of malicious mischief in the second degree, a Class C felony. The State argues that the trial court did not err by imposing a $100 DNA collection fee because there is no proof in the record that Franck's DNA was ever collected. We hold that on remand the State has the burden to prove Franck has not previously provided his DNA.

In 2018, the legislature amended RCW 43.43.7541, effective June 7, 2018, to authorize the imposition of a DNA fee only if the State has not "previously collected the offender's DNA as a result of a prior conviction." LAWS OF 2018, ch. 269, § 18. This statutory amendment applies prospectively to cases pending on review. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

A defendant is required to submit a DNA sample for any adult or juvenile felonies. RCW 43.43.754(1)(a). He or she need not submit a DNA sample if the Washington State patrol crime laboratory already has one. RCW 43.43.754(4).

Because the record is unclear, on remand the State has the burden to prove that Franck's DNA has not been previously collected. *See State v. Houck*, 9 Wn. App. 2d 636, 651, 446 P.3d 646 (2019) (for defendants with prior felony convictions, the State bears the burden of proving that it has not previously collected the defendant's DNA).

## CONCLUSION

We affirm the convictions but vacate the sentence, and remand for resentencing. At resentencing, the trial court should ensure that any community custody condition regarding DOC home visits complies with *Cornwell* and that a DNA collection fee should not be imposed unless the State can prove Franck has not previously provided a DNA sample.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

CRUSER, J.

24