# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54094-1-II |
| Respondent, | |
| v. | |
| SEIRAH LYNN DANIELS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Seirah L. Daniels appeals her conviction and sentence for second degree rape of a child.  Daniels argues that there is an insufficient factual basis to support her guilty plea and she received ineffective assistance of counsel at sentencing.  Daniels also argues that the trial court erred by imposing certain community custody conditions.

We hold that there was a sufficient factual basis for Daniels' guilty plea and that Daniels' ineffective assistance of counsel claim fails.  Therefore, we affirm Daniels' conviction, but we remand to the trial court to strike community custody conditions 9 and 10 from her judgment and sentence.

## FACTS

Daniels held down 12-year-old K.M.U. while Daniels' husband, Johnny Roach, raped K.M.U.  Daniels was 19 years old at the time of the offense.  Daniels and Roach were both charged with second degree rape of a child.

Daniels entered into a plea deal with the State.  The plea deal required Daniels to plead guilty to second degree rape of a child and to cooperate with the State during Roach's prosecution.

If she cooperated, the State agreed to allow Daniels to withdraw her guilty plea and to enter a plea to third degree rape of a child.

In conformance with the terms of the plea deal, Daniels pleaded guilty to second degree rape of a child. Her statement on plea of guilty states:

> In Lewis County Wa, between October 1, 2017 and December 31, 2017, my 18 year old husband engaged in sexual intercourse with KMU (dob 9-12-05). KMU was 12 years old and not married to or in a state registered domestic partnership with my husband (Johnny Roach). I aided, and encouraged this sex act.

Clerk's Papers (CP) at 13. Daniels breached her plea agreement with the State. As a result, Daniels did not get the benefit of her plea agreement, and the State did not allow her to withdraw her guilty plea and enter a plea to the lesser charge.

At sentencing, defense counsel argued that Daniels should be sentenced to the low end of the standard range for second degree child rape because she is "a follower" who "makes bad decisions" and had not been the primary aggressor in the case. Verbatim Report of Proceeding (VRP) (July 10, 2019) at 22. Defense counsel did not ask the trial court to impose an exceptional sentence below the standard range based on Daniels' youthfulness.

The trial court imposed a standard range sentence of 96 months. In issuing its sentence, the trial court stated,

> I'm going to impose a sentence of 96 months. It's almost the bottom of the range. And I think that compared to what Mr. Roach did, looking at Ms. Daniels' role in this, it is lesser in my mind. I don't think it's bottom of the range, but I think eight years has a certain ring to it. I think eight years will allow her the time, as Ms. Usselman put it so well, to find herself and to find her strength. She certainly doesn't have that now.
>
> What I saw on the stand to this day mystifies me. I don't know what her intent was. I honestly don't. I don't know if she was trying to help the state or if she was trying to help Mr. Roach. It's clear to me that she breached her plea

agreement, and this is a consequence of receiving that plea agreement. Again, I don't know what her intent was. I don't know if she had the ability to follow through and hold up in the face of cross examination, but it's clear to me that she breached her plea agreement, and this is the result of breaching that plea agreement.

VRP (July 10, 2019) at 24. The trial court also imposed the following community custody conditions:

> 9) The defendant shall submit to random Urinalysis and Breathalyzer as directed by the assigned Community Corrections Officer.

> 10) The defendant must consent to allow home visits by DOC to monitor compliance with supervision. Home visits will include access for purposes of visual inspection of all areas of the residence in which the offender lives or has exclusive or joint control or access.

CP at 40. The trial court did not find that chemical dependency contributed to Daniels' offense when it imposed condition 9.

Daniels appeals.

## ANALYSIS

A.  GUILTY PLEA

Daniels argues that her guilty plea did not sufficiently establish that she knowingly promoted or facilitated second degree rape of a child. We disagree.

1.  Legal Principles

Constitutional due process requires that a defendant's guilty plea must be knowing, intelligent, and voluntary. *State v. Codiga,* 162 Wn.2d 912, 922, 175 P.3d 1082 (2008). A guilty plea is not voluntary unless the defendant knows the elements of the offense and understands how her conduct satisfies those elements. *State v. R.L.D.,* 132 Wn. App. 699, 705, 133 P.3d 505 (2006). A plea also cannot be considered voluntary if there is an insufficient factual basis for the plea. *In*

*re Pers. Restraint of Evans*, 31 Wn. App. 330, 332, 641 P.2d 722, *cert. denied*, 459 U.S. 852 (1982).  The factual basis for a plea is insufficient if it fails to satisfy all the elements of the offense.  *See R.L.D.,* 132 Wn. App. at 706.  We review constitutional issues de novo.  *State v. MacDonald*, 183 Wn.2d 1, 8, 346 P.3d 748 (2015).

A trial court's determination that a factual basis exists for the plea does not require that the court be convinced of a defendant's guilt beyond a reasonable doubt, but only that sufficient evidence exists to sustain a jury's finding of guilt.  *State v. Zhao*, 157 Wn.2d 188, 198, 137 P.3d 835 (2006).  In determining a factual basis, the trial court may consider any reliable source as long as it is in the record.  *In re Pers. Restraint of Fuamaila,* 131 Wn. App. 908, 924, 131 P.3d 318 (2006).  When there is insufficient evidence to support the plea, the proper remedy is to vacate the plea and dismiss the charges.  *R.L.D.*, 132 Wn. App. at 706.

Second degree rape of a child requires proof that "the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim."  Former RCW 9A.44.076(1) (1990).  A person is an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, [the person]: . . . [s]olicits, commands, encourages, or requests such other person to commit it; or . . . [a]ids or agrees to aid such other person in planning or committing it."  RCW 9A.08.020(3)(a).  "A person knows or acts knowingly or with knowledge when: . . . [h]e or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense."  RCW 9A.08.010(1)(b)(i).

2.      Sufficient Factual Basis

Daniels argues that her guilty plea did not sufficiently establish that she knowingly promoted or facilitated second degree rape of a child. Daniels' statement on plea of guilty states:

> My 18 year old husband engaged in sexual intercourse with KMU (dob 9-12-05). KMU was 12 years old and not married to or in a state registered partnership with my husband (Johnny Roach). I aided, and encouraged this sex act.

CP at 13. While not using the statutory phrase "with the knowledge it will promote or facilitate" second degree rape of a child, Daniels' statement satisfies all of the elements for second degree rape of a child under an accomplice liability theory.

Here, Daniels admitted that K.M.U. was 12 years old, Roach was 18 years old, and Roach was not married to nor in a state registered partnership with K.M.U. *See* former RCW 9A.44.076(1). Daniels also admitted that Roach and K.M.U. had sexual intercourse and that she "aided, and encouraged this sex act." CP at 13. *See* former RCW 9A.44.076(1); RCW 9A.08.020(3)(a). Thus, Daniels admitted to aiding and encouraging "this sex act," meaning the sexual intercourse between Roach and K.M.U., when Daniels knew that K.M.U. was 12 years old and more than 36 months younger than Roach, and was not married or in a state registered partnership. Daniels' statement demonstrates her knowledge of all the facts described by statute as second degree rape of a child and provides a sufficient factual basis for her guilty plea.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Daniels argues that she received ineffective assistance because defense counsel failed to request an exceptional downward sentence based on her youth. We disagree.

An ineffective assistance of counsel claim is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). The Sixth

5

Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). A criminal defendant also has a right to effective assistance of counsel at sentencing. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977); *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, No. 98493-0 (Wash. June 10, 2021), https://www.courts.wa.gov/opinions/pdf/984930.pdf.

To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33. If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Id.* at 33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* This court engages in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Counsel's failure to cite controlling case law to the trial court and use it to argue for an exceptional downward sentence can be considered deficient performance. *State v. Adamy*, 151 Wn. App. 583, 588, 213 P.3d 627 (2009); *State v. McGill,* 112 Wn. App. 95, 101-02, 47 P.3d 173 (2002).

The record before this court must be sufficient for us to determine what counsel's reasons for the decision were in order to evaluate whether counsel's reasons were legitimate. *State v. Linville*, 191 Wn.2d 513, 525-26, 423 P.3d 842 (2018). If counsel's reasons for the challenged

action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Id.*

To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

Here, the record contains no information on the reasons that defense counsel chose not to request an exceptional downward sentence based on Daniels' youthfulness. Because the record on appeal does not establish the reasons behind counsel's decisions, we decline to reach this issue.[1,2]

---

[1] Daniels may bring a separate collateral challenge. *Linville*, 191 Wn.2d at 526.

[2] We note that even if we were to address Daniels' ineffective assistance of counsel challenge, she fails to show prejudice. At sentencing, the trial court stated:

> What I saw on the stand to this day mystifies me. I don't know what her intent was. I honestly don't. I don't know if she was trying to help the state or if she was trying to help Mr. Roach. It's clear to me that she breached her plea agreement, *and this is a consequence of receiving that plea agreement.* Again, I don't know what her intent was. I don't know if she had the ability to follow through and hold up in the face of cross examination, but it's clear to me that she breached her plea agreement, and *this is the result of breaching that plea agreement.*

VRP (July 10, 2019) at 24 (emphasis added). Thus, Daniels' standard range sentence resulted from breaching her plea agreement with the State. There is no dispute that the trial court was aware of Daniels' age. Therefore, even if defense counsel argued for an exceptional downward sentence based on Daniels' youthfulness, the record does not support the conclusion that there is a reasonable probability that the trial court would have imposed a sentence below the standard range. Because there is no reasonable probability that the trial court would have imposed a more lenient sentence, Daniels fails to show prejudice. *See Kyllo*, 166 Wn.2d at 862.

C.      RANDOM DRUG AND ALCOHOL TESTING

Daniels argues that "[t]he sentencing court exceeded its statutory authority by ordering her to submit to random urinalysis and breathalyzer testing without finding that a chemical dependency had contributed to the offense and when those conditions were not otherwise crime-related." Br. of Appellant at 15-16. The State responds that, because the court properly prohibited Daniels from using controlled substances, it may require her to submit to urinalysis and breathalyzer testing to monitor compliance with this prohibition. We agree with Daniels.

1.      Legal Principles

We review de novo whether the trial court had the statutory authority to impose a sentencing condition. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). But a challenge that a community custody condition is not crime-related is reviewed for an abuse of discretion. *State v. Sanchez Valencia*, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010). An abuse of discretion occurs when a trial court's imposition of a condition is manifestly unreasonable. *State v. Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).

RCW 9.94A.703(2)(c)[3] provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to: . . . . (c) Refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." And under RCW 9.94A.703(3)(e), the court may order the offender to "[r]efrain from possessing or consuming alcohol."

---

[3] RCW 9.94A.703 was amended in 2021. However, there were no substantive changes made affecting this opinion. Therefore, we cite to the current statute.

A trial court may also order an offender to "[c]omply with any crime-related prohibitions" as a term of community custody. RCW 9.94A.703(3)(f). A "crime-related prohibition" is an "order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).[4] "A court does not abuse its discretion if a 'reasonable relationship' between the crime of conviction and the community custody condition exists." *Nguyen*, 191 Wn.2d at 684 (quoting *State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015)). "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *Id.* (quoting *Irwin*, 191 Wn. App. at 657). If we determine that a trial court imposed an unauthorized condition on community custody, we remedy the error by remanding to the trial court with an instruction to strike the unauthorized condition. *State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018).

In *State v. Olsen*, our Supreme Court upheld random urinalysis testing for probationers convicted of driving under the influence (DUI). 189 Wn.2d 118, 134, 399 P.3d 1141 (2017). The court held that, because random drug testing implicates probationers' privacy interests, the intrusion is only lawful where it is narrowly tailored to meet a compelling state interest. *Id.* at 127-28. The court upheld the condition because the State has a strong interest in supervising DUI probationers and random urinalysis is narrowly tailored to meet that interest. *Id.* at 128, 134.

The *Olsen* court stated that random drug tests may be imposed "to assess compliance with a valid prohibition on drug and alcohol use." *Id.* at 130. The court reasoned that the trial court properly conditioned the defendant's release upon her agreement to refrain from drugs and alcohol

---

[4] RCW 9.94A.030 was amended in 2020. However, there were no substantive changes made affecting this opinion. Therefore, we cite to the current statute.

and "[i]t follows that the trial court also has authority to monitor compliance with that condition through narrowly tailored means." *Id.* The court rejected an argument that upholding the condition would open the door to permitting random, suspicionless searches in all situations. *Id.* at 132. The court held the condition reasonable in the circumstances of that case because, "Olsen was convicted of DUI, a crime involving the abuse of drugs and alcohol. A probationer convicted of DUI can expect to be monitored for consumption of drugs and alcohol." *Id.* at 133. Reiterating its conclusion that random drug testing was narrowly tailored and directly related to the probationer's rehabilitation, the court stated that "random [urine analyses], under certain circumstances, are a constitutionally permissible form of close scrutiny of DUI probationers." *Id.* at 134.

2.      Not Crime Related

Here, the trial court imposed a condition requiring Daniels to refrain from possessing or consuming controlled substances except where lawfully prescribed. The trial court also imposed a discretionary condition prohibiting Daniels from consuming alcohol. Daniels does not challenge the validity or imposition of either of these conditions. Instead, Daniels argues that the trial court erred by imposing community custody condition 9, which requires random urinalysis and breathalyzer testing, because it is not related to the crime she committed. We agree.

While a trial court can impose monitoring conditions, those conditions must be crime related. RCW 9A.94.703(3)(f). But the trial court did not find that chemical dependency contributed to her offense. And the State presented no evidence that drug or alcohol use bore any relation to Daniels' offense. Unlike *Olsen*, Daniels cannot expect to be monitored for drug or alcohol consumption because drug or alcohol use does not relate to the essential facts of her

conviction and is not causally connected to her conviction. *Olsen*, 189 Wn.2d at 133. *Olsen* does not support the general proposition that random urinalysis and breathalyzer testing is constitutional to monitor compliance with conditions imposed under RCW 9.94A.703(2) and (3). Therefore, because "there is no evidence in the record linking the circumstances of the crime to the condition," the trial court abused its discretion by imposing random urinalysis and breathalyzer testing. *Padilla*, 190 Wn.2d at 683.

D.     SEARCHES BY DOC

Daniels argues that the trial court erred in imposing community custody condition 10, which requires Daniels to consent to home visits by DOC that includes access to all areas of the residence for visual inspection. The State concedes this issue. We accept the State's concession and hold that the trial court erred by imposing community condition 10.[5]

Issues of constitutional law are reviewed de novo. *State v. Cornwell*, 190 Wn.2d, 296, 300, 412 P.3d 1265 (2018). Article I, section 7 of our State Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Under article I, section 7, the requisite "authority of law" is generally a search warrant. *State v. Morse,* 156 Wn.2d 1, 7, 123 P.3d 832 (2005). Regarding the right to privacy, article I, section 7 provides broader protections than the Fourth Amendment, as it "'clearly recognizes an individual's right to privacy with no express limitations.'" *State v. Ladson*, 138 Wn.2d 343, 348, 979 P.2d 833 (1999) (internal quotation marks omitted) (quoting *State v. Young*, 123 Wn.2d 173,

---

[5] Daniels' brief addresses a ripeness argument, presumably in anticipation of the State raising a ripeness challenge in its response brief. However, the State did not raise a ripeness argument in its response brief; rather, the State conceded that community custody condition 10 is not lawful and must be stricken. Therefore, we do not address Daniels' ripeness argument.

180, 867 P.2d 593 (1994)). Warrantless searches are generally per se unreasonable. *Id.* at 349. They are, however, "subject to 'a few jealously and carefully drawn exceptions.'" *Cornwell*, 190 Wn.2d at 301 (internal quotation marks omitted) (quoting *Ladson*, 138 Wn.2d at 349).

Defendants on probation are not entitled to the full protection of article I, section 7 because they are persons whom a court has sentenced to confinement but who are "'serving their time outside the prison walls.'" *Id*. at 301-02 (internal quotation marks omitted) (quoting *Olsen*, 189 Wn.2d at 124). "Accordingly, it is constitutionally permissible for a [community corrections officer] to search an individual based only on a 'well-founded or reasonable suspicion of a probation violation,' rather than a warrant supported by probable cause." *Id.* at 302 (quoting *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009)).

This warrant exception is codified in RCW 9.94A.631,[6] which reads, in relevant part, "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." RCW 9.94A.631(1). This does not mean that probationers "forfeit all expectations of privacy in exchange for their release into the community." *Cornwell*, 190 Wn.2d at 303. "Individuals' privacy interest can be reduced 'only to the extent necessitated by the legitimate demands of the operation of the [community supervision] process.'" *Id.* at 303-04 (alteration in original) (internal quotation marks omitted) (quoting *Olsen*, 189 Wn.2d at 125).

---

[6] RCW 9.94A.631 was amended in 2020. However, there were no substantive changes made affecting this opinion.

"First, a [community corrections officer] must have 'reasonable cause to believe' a probation violation has occurred before conducting a search at the expense of the individual's privacy." *Id.* at 304. There must be a nexus between the property searched and the suspected probation violation. *Id.* at 304, 306. "Second, the individual's privacy interest is diminished only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search." *Id.* at 304.

> Here, community custody condition 10 provides that
>
> [t]he defendant must consent to allow home visits by DOC to monitor compliance with supervision. Home visits will include access for purposes of visual inspection of all areas of the residence in which the offender lives or has exclusive or joint control or access.

CP at 40. Under *Cornwell*, DOC has the authority to search a probationer's home only if a correctional officer has a reasonable suspicion to believe a probation violation by the probationer has occurred. 190 Wn.2d at 302. Further, DOC must search the home only to the extent necessary "for the [DOC] to monitor compliance with the particular probation condition that gave rise to the search." *Id.* at 304. And there also must be a nexus between the property searched and the suspected probation violation. *Id.* at 304, 306. But none of these constitutional strictures are contained in condition 10. Rather, the condition gives correctional officers an unfettered right to search Daniels' residence. *Id.* at 303. Because the language stated in community custody condition 10 does not comply with *Cornwell*, we hold that it is overly broad and unconstitutional.

## CONCLUSION

We affirm Daniels' conviction but remand for the trial court to strike community custody conditions 9 and 10 from her judgment and sentence.

No. 54094-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.