# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>MATTHEW DALE CLARK REAVIS,<br><br>Petitioner. | No. 58353-4-II<br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, A.C.J. — In this personal restraint petition (PRP), Matthew Reavis challenges several community custody conditions following his convictions for attempted child rape in the second degree, felony communication with a minor for immoral purposes, and possession of depictions of minors engaged in sexually explicit conduct. By order, this court already dismissed as frivolous several of Reavis's claims. We hold that Reavis fails to establish an exception to the one-year time bar for the remainder of his claims and dismiss his petition as untimely.

## FACTS

In 2019, Reavis pled guilty to attempted child rape in the second degree, felony communication with a minor for immoral purposes, and possession of depictions of minors engaged in sexually explicit conduct.

The attempted child rape in the second degree conviction was based on police posing as a fictitious 13-year-old girl to arrange a meeting with Reavis on an online social media platform.

Reavis coordinated a meeting with the girl for the intent to have oral and anal sexual intercourse. When Reavis arrived, he was arrested.

The communication with a minor for immoral purposes conviction was based on Reavis messaging with a 16-year-old girl to meet up for a "porn photo shoot" via the same online social media platform. Br. of Resp't, App. at 4.

The possession of depictions of minors engaged in sexual activity conviction was based on photographs found on Reavis's cell phone when he was arrested. Reavis admitted that he possessed the photographs for his own sexual gratification.

Prior to sentencing, the trial court ordered the Department of Corrections (DOC) to compile a presentence investigation report. The report stated that when Reavis was arrested police located two cell phones in his car. One of his cell phones contained over 100 images of minors engaged in sexually explicit conduct. The report also indicated that Reavis took sexually explicit photographs on his phone of a three-year-old girl. The girl's mother identified the girl and reported that Reavis and the girl stayed overnight in his recreational vehicle on two occasions.

The report indicated that Reavis denied using drugs or alcohol in the commission of his crimes, but he has a family history of addiction and he was working on overcoming a nicotine habit.

On November 26, 2019, the trial court sentenced Reavis. His sentence included several sex offender special community custody conditions set forth in Appendix H to Reavis's judgment and sentence. Reavis was ordered to "[n]ot possess or consume controlled substances" and to not "consume alcohol and/or [m]arijuana." Br. of Resp't, App. at 59-60. The court also imposed the following conditions, relevant to Reavis's petition:

12 Be available for and submit to urinalysis and/or breathanalysis upon the request of the CCO [community correction officer] and/or the chemical dependency treatment provider.

. . . .

19 . . . Stay out of areas where children's activities regularly occur or are occurring. This means parks used for youth activities, schools, daycare facilities, playgrounds, shopping malls, fast food restaurants (to include the drive-thrus), wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

. . . .

24 . . . No internet access or use, including email, without prior approval of the supervising CCO and Treatment Provider.

25 . . . No use of a computer, phone, or computer related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches). The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

26 . . . No possession of any audio or video recording equipment, to include personal electronic devices, such as cell phones, watches, and iPods, with a camera/video recording capability without the prior approval of the supervising CCO and Treatment Provider. The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

Br. of Resp't, App. at 60.

In August 2022, Reavis filed a CrR 7.8 motion to modify his judgement and sentence. He argued that his judgment and sentence was facially invalid because the trial court improperly calculated his offender score and imposed several community custody conditions that were unconstitutional or exceeded the trial court's authority (conditions 8, 9, 10, 11, 12, 19, 24, 25, and 26).

The trial court transferred Reavis's untimely motion to us as a PRP under CrR 7.8(c)(2). In our April 12, 2024 order, we determined that Reavis's challenge to his offender score was time barred; that the challenges to conditions 9, 10, and 11 were also time barred; and that the challenge to condition 8, involving a home search, was not ripe for review. We dismissed those claims. We

determined that the remaining community custody challenges (12, 19, 24, 25, 26) should be referred to a panel of judges for review.

ANALYSIS

Reavis contends that conditions 12, 19, 24, 25, and 26 are unconstitutional. He argues that these conditions render his judgment and sentence facially invalid, an exception to the one-year time bar. We disagree.

I.    PRP PRINCIPLES

Relief through a PRP is extraordinary. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). A petitioner may seek relief through a PRP when they are under unlawful restraint. RAP 16.4(a). To be timely, a petitioner challenging a judgment and sentence must file a PRP within one year after the judgment becomes final. RCW 10.73.090(1). This time limit does not apply if the judgment and sentence is invalid on its face. RCW 10.73.090(1).[1] The petitioner bears the burden of showing that they timely filed their PRP. *In re Pers. Restraint of Quinn*, 154 Wn. App. 816, 832, 226 P.3d 208 (2010). Untimely challenges to a final judgment and sentence are time barred, and we will not consider them. *Id*.

Reavis's judgment and sentence became final in November 2019, when it was filed. RCW 10.73.090(3)(a). Reavis did not file his petition until August 2022. Reavis does not dispute that he filed his PRP more than a year after his judgment and sentence became final, but he argues that

---

[1] A recently created exception to the one-year time bar is when a petitioner files a motion for modification of community custody conditions pursuant to RCW 9.94A.703 and RCW 9.94A.709. RCW 10.73.100(6). This exception took effect in March 2024. LAWS OF 2024, ch. 118, § 8(6). This exception applies when there is a motion for modification "following the offender's release from total confinement." RCW 9.94A.703(5)(a); RCW 9.94A.709(2)(a). This is not the case here. Accordingly, this exception does not apply.

the challenged community custody conditions render his judgment and sentence invalid on its face, an exception to the time bar.

"[T]he general rule is that a judgment and sentence is not valid on its face if the trial judge actually exercised authority (statutory or otherwise) it did not have." *In re Pers. Restraint of Scott*, 173 Wn.2d 911, 917, 271 P.3d 218 (2012). "Invalid on its face" means "the judgment and sentence evidences the invalidity without further elaboration." *In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 532, 55 P.3d 615 (2002). Matters "of fact and trial judge discretion" are "not evident on the face of the judgment and sentence without further elaboration." *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 814, 383 P.3d 454 (2016).

"Constitutionally invalid on its face" means "a conviction which without further elaboration evidences infirmities of a constitutional magnitude." *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 718, 10 P.3d 380 (2000); *State v. Ammons*, 105 Wn.2d 175, 188, 713 P.2d 719, 718 P.2d 796 (1986). Significantly, our Supreme Court has recognized that the court can infringe on a convicted offender's constitutional rights during a term of community custody if the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, authorizes it. *State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996). But the conditions must be "sensitively imposed" and "'reasonably necessary to accomplish the essential needs of the state and public order.'" *State v. Bahl*, 164 Wn.2d 739, 757, 193 P.3d 678 (2008) (internal quotation marks omitted) (quoting *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993)).

II.   LEGAL PRINCIPLES REGARDING COMMUNITY CUSTODY CONDITIONS

   A.   Vagueness

Community custody conditions that are vague are unconstitutional under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington

5

Constitution. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678-79, 425 P.3d 847 (2018). Community custody conditions are unconstitutional if they (1) do not define the condition "'with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . [do] not provide ascertainable standards . . . to protect against arbitrary enforcement.'" *Id*. at 678 (internal quotation marks omitted) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

A community custody condition "'is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018) (internal quotation marks omitted) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)). Rather, the question is whether fair-minded citizens have fair warning of proscribed conduct. *State v. Shreve*, 28 Wn. App. 2d 785, 791, 538 P.3d 958 (2023). And they do if "ordinary people can understand what is and is not allowed, and are protected against arbitrary enforcement." *Sanchez Valencia*, 169 Wn.2d at 791.

When deciding a vagueness challenge, we consider the terms in the context in which they are used. *In re Pers. Restraint of Ansell*, 1 Wn.3d 882, 898, 533 P.3d 875 (2023). "Community custody conditions should be 'read in a commonsense fashion in the context of the judgment and sentence, and related documents that will be available to [the CCO].'" *Id*. (alteration in original) (quoting *State v. Johnson*, 197 Wn.2d 740, 748, 487 P.3d 893 (2021)).

B.      Overbreadth

An overbreadth challenge to a community custody condition "goes to the question of whether state action is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." *In re Pers. Restraint of Sickels*,

14 Wn. App. 2d 51, 67, 469 P.3d 322 (2020). However, limitations on fundamental rights of a person on community custody are permissible if they are sensitively imposed and narrowly tailored. *Johnson*, 197 Wn.2d at 744-45. "[T]he interplay of sentencing conditions and fundamental rights is delicate and fact-specific, not lending itself to broad statements and bright line rules." *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010).

C.      Ripeness

A preenforcement challenge to community custody conditions is ripe for review when "'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Nelson*, ___ Wn.3d ___, 565 P.3d 906, 913 (2025) (internal quotation marks omitted) (quoting *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015)). Factual development is needed when the challenger's argument is based on the potential for "'[s]ome future misapplication of the community custody condition,' which necessarily depends 'on the particular circumstances of the attempted enforcement.'" *Id*. (internal quotation marks omitted) (quoting *Cates*, 183 Wn.2d at 535). We also consider the hardship the petitioner would face if we decline to review his or her challenge at this time. *Nelson*, 565 P.3d at 913.

D.      Crime Related

Under RCW 9.94A.703(3)(f), the trial court may require an offender to "[c]omply with any crime-related prohibitions." A crime-related prohibition must "directly relate[] to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). There must be a basis for connecting the condition to the crime. *State v. Geyer*, 19 Wn. App. 2d 321, 331, 496 P.3d 322 (2021). "A community custody condition is not impermissibly overbroad if it is crime related." *State v. Lee*, 12 Wn. App. 2d 378, 401, 460 P.3d 701 (2020).

III.     COMMUNITY CUSTODY CONDITION NO. 12

Reavis asserts that condition 12 is unconstitutional because it is not crime related and it allows urinalysis and/or breathanalysis to be required without suspicion of drug or alcohol use. We disagree.

RCW 9.94A.703(2)(c) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions."  And, "[a]s part of any term of community custody, the court may order an offender to . . . [r]efrain from possessing or consuming alcohol."  RCW 9.94A.703(3)(e).

Here, in accordance with RCW 9.94A.703(2)(c), the trial court ordered Reavis to not consume drugs or alcohol.  It then imposed condition 12 that ordered testing to ensure compliance with its no consumption condition.

Our Supreme Court recently held that a community custody condition requiring the defendant to "[s]ubmit to breathalyzer testing or any other testing to ensure no alcohol consumption" was not unconstitutional if it was the only way to monitor compliance with valid conditions related to refraining from drug and alcohol consumption.  *Nelson*, 565 P.3d at 910, 920. If further factual development is necessary, a condition is not invalid on its face.  *See Hemenway*, 147 Wn.2d at 532.

Because condition 12 is not invalid, it does not render Reavis's judgment and sentence facially invalid.  Without this showing, the challenge to condition 12 is time barred and we decline to address it further.

8

IV.    COMMUNITY CUSTODY CONDITION NO. 19

Reavis next argues that condition 19 that prohibits him from being in places were children congregate, including shopping malls, schools, and fast food restaurants, is unconstitutionally overbroad.  We disagree.

Our focus is on whether the conditions are couched in terms so broad that they not only prohibit unprotected behavior but prohibit constitutionally protected activity as well.  *Sickels*, 14 Wn. App. 2d at 67.  Nevertheless, limitations on fundamental rights of a person on community custody are permissible if they are sensitively imposed and narrowly tailored.  *Johnson*, 197 Wn.2d at 744.  Given that Reavis's offenses involved children, it is reasonable to prohibit him from frequenting places where children are commonly present and to limit his contact with minors.  The terms "shopping malls," "schools," and "fast food restaurants" are not overbroad because the restrictions are clear and reasonably necessary to accomplish essential State needs and public order, and are sensitively imposed.  *See Bahl*, 164 Wn.2d at 757.  Accordingly, Reavis fails to show that condition 19 renders the judgment and sentence facially invalid.  The challenge to community custody condition 19 is time barred.

V.    COMMUNITY CUSTODY CONDITIONS NO. 24 AND NO. 25

Reavis next argues that conditions 24 and 25 are unconstitutionally vague and overbroad rendering his judgment and sentence facially invalid.  We disagree.

Conditions 24 and 25 relate to internet access.  In *Johnson*, the Supreme Court approved of a community custody condition that the offender shall "not use or access the World Wide Web unless specifically authorized by [his community custody officer] through approved filters."  197 Wn.2d at 744.  The court concluded that any danger of arbitrary enforcement is constrained by the facts of the convictions.  *Id*. at 749.  According to the court, "the crimes themselves and the

9

statement of probable cause provide sufficient direction to prevent arbitrary enforcement." *Id*. The court explained that because the probable cause statement contained "a detailed recitation of the facts that led up to Johnson's arrest, including the role Johnson's Internet use played," there are "meaningful benchmarks to restrict arbitrary enforcement." *Id.*

Similarly, here, conditions 24 and 25 are narrowly tailored like those in *Johnson*. They limit the restrictions to the particular dangers posed by Reavis, namely his ability to contact minors through the Internet. The court appropriately carved out exceptions for employment purposes. And it permitted access if Reavis receives approval from his CCO and/or treatment provider. The CCO searches permitted in conditions 24 and 25 are reasonably necessary to accomplish the State's duty to protect children. *See State v. DeLeon*, 11 Wn. App. 2d 837, 840, 456 P.3d 405 (2020) (prevention of harm to children is a compelling state interest).

Additionally, RCW 9.94A.631(1) states, "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a [CCO] may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." A CCO "must have 'reasonable cause to believe' a probation violation has occurred before conducting a search at the expense of the individual's privacy." *State v. Cornwell*, 190 Wn.2d 296, 304, 412 P.3d 1265 (2018). Further, the offender's "privacy interest is diminished only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search." *Id*. "[F]ailure to include the language does not affect the order's constitutionality." *State v. Massey*, 81 Wn. App. 198, 201, 913 P.2d 424 (1996). Therefore, failure to include the language would not render the judgment and sentence facially invalid because reasonable cause is already statutorily required.

Accordingly, conditions 24 and 25 are narrowly tailored to Reavis's crimes, reasonably necessary to accomplish essential needs of the State, and do not allow for arbitrary enforcement. Reavis fails to show that conditions 24 and 25 render the judgment and sentence facially invalid. Therefore, the challenges to these conditions are time barred.[2]

VI.     COMMUNITY CUSTODY CONDITION NO. 26

Reavis next argues that condition 26 regarding restricting his use of recording devices without CCO approval is unconstitutionally overbroad rendering his judgment and sentence facially invalid. We disagree.

As discussed above, "[a] community custody condition is not impermissibly overbroad if it is crime related." *Lee*, 12 Wn. App. 2d at 401. In general, a determination as to whether a condition is crime related requires an inquiry into whether the condition "directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). And an inquiry into the circumstances of the crimes underlying Reavis's convictions involves "a matter of fact and trial judge discretion," requiring elaboration beyond "the face of [his] judgment and sentence." *Swagerty*, 186 Wn.2d at 814. Therefore, Reavis's contention does not establish that condition 26 is facially invalid. The challenge to this condition is time barred.

---

[2] We also note that contrary to Reavis's argument, the two conditions are not redundant. Condition 24 involves the use of the Internet and condition 25 involves specific devices.

CONCLUSION

Because Reavis fails to establish an exception to the one-year time bar, we dismiss his petition as untimely.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Glasgow, J.

Che, J.