YU, J.
*297 ¶ 1 It is well established that an individual on probation has a reduced expectation of privacy, and a community corrections officer (CCO) may conduct a warrantless search if he or she suspects the individual has violated a probation condition. The issue in this case is whether there are any limitations on the scope of the CCO's search. We hold that article I, section 7 of the Washington Constitution requires a nexus between the property searched and the suspected probation violation. There was no nexus in the search at issue here. Accordingly, we reverse the Court of Appeals and Cornwell's convictions.
*298 FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 In September 2013, petitioner Curtis Lamont Cornwell was placed on probation.[1] His judgment and sentence allowed his probation officer to impose conditions of his release, which included the following provision:
I am aware that I am subject to search and seizure of my person, residence, automobile, or other personal property if there is reasonable cause on the part of the Department of Corrections to believe that I have violated the conditions/requirements or instructions above.
Ex. 4, at 3. Cornwell failed to report to the Department of Corrections (DOC) in violation of his probation, and DOC subsequently issued a warrant for his arrest.
¶ 3 Cornwell first came to the attention of Tacoma Police Department Officer Randy Frisbie and CCO Thomas Grabski because of a distinctive Chevrolet Monte Carlo observed outside a house suspected of being a site for drug sales and prostitution. CCO Grabski later spoke with the registered owner of the vehicle, who said that she had given the car to Cornwell to drive but she wanted it back. Unfamiliar with Cornwell, one of the officers conducted a records check and determined he had an outstanding warrant.
¶ 4 In late November 2014, at approximately 1:00 a.m., Officer Frisbie spotted the *1267 Monte Carlo while on patrol with Officer Patrick Patterson, another member of the Tacoma Police Department. Officer Frisbie testified that he intended to stop the vehicle because he believed Cornwell was driving it and he had an outstanding warrant. He did not initiate the stop based on any belief that the car contained drugs or a gun or because he observed a traffic violation. *299 ¶ 5 Before Officer Frisbie could activate his police lights, the car pulled into a driveway and Cornwell began to exit it. Cornwell ignored Officer Frisbie's orders to stay in the vehicle, and Officer Frisbie believed Cornwell was attempting to distance himself from the car. Officer Frisbie then ordered Cornwell to the ground. Cornwell started to lower himself in apparent compliance before jumping up and running. Cornwell was apprehended after both officers deployed their Tasers. He had $1,573 on his person at the time of arrest.
¶ 6 After securing Cornwell, Officer Patterson called CCO Grabski to the scene. CCO Grabski testified that his job is "to help apprehend fugitives of [DOC] as well as to look into violations of people that are on probation." 1 Verbatim Report of Proceedings (VRP) (Dec. 16, 2014) at 82. He testified that he believed Cornwell's warrant was for his failure to report to DOC because "that's pretty much why there's a warrant in the system is they failed to report to [DOC]."Id. at 113. Asked if he could think of another reason a warrant would issue, he said, "I can't think of anything that would be different." Id.
¶ 7 Upon arrival at the arrest scene, CCO Grabski searched the Monte Carlo. He described the basis for his search as follows:
When people are in violation of probation, they're subject to search. So he's driving a vehicle, he has a felony warrant for his arrest by [DOC] which is in violation of his probation. He's driving the vehicle, he has the ability to access to enter the vehicle, so I'm searching the car to make sure there's no further violations of his probation.
Id. at 93. He explained, "If there is anything in the vehicle, whether it is in a suitcase, clothing, I'm going to go through those items." Id. at 94. In this case, CCO Grabski found a black nylon bag sitting on the front seat of the car. The bag contained oxycodone, amphetamine and methamphetamine pills, sim cards, and small spoons. A cell phone was also found in the car.
*300 ¶ 8 Cornwell moved pursuant to CrR 3.6 to suppress the evidence obtained during the vehicle search. In denying the motion, the trial court stated that any subjective expectation of privacy Cornwell had "was not ... objectively reasonable" given that he was on probation and had signed conditions of release that reflected his reduced expectation of privacy. Id. at 141.
¶ 9 A jury convicted Cornwell of three counts of unlawful possession of a controlled substance with intent to deliver and one count of resisting arrest. In an unpublished opinion, the Court of Appeals affirmed, holding that there need not be a nexus between the property searched and the alleged probation violation. State v. Cornwell, No. 47444-1-II, slip op. at 7, 2016 WL 5077833 (Wash. Ct. App. Sept. 20, 2016) (unpublished), http://www.courts.wa.gov/opinions/. Alternatively, the court held that if such a nexus were required, it was satisfied in this instance. Id. at 8. We granted review only as to the lawfulness of the property search.
ISSUE
¶ 10 Was the search of the car Cornwell was driving an unlawful search requiring suppression of the evidence obtained?
ANALYSIS
¶ 11 Issues of statutory interpretation and constitutional law are reviewed de novo. State v. Evans, 177 Wash.2d 186, 191, 298 P.3d 724 (2013).
A. Preservation of the issue
¶ 12 We first address the threshold question of issue preservation because the State argues Cornwell failed to preserve his claim that there must be a nexus between the property searched and the alleged probation violation. Ct. Ordered Answer to Pet. for Review at 6-7. At the CrR 3.6 hearing, defense counsel primarily relied on the theory that *301 CCO Grabski knew that the car belonged to a third party and he did not have *1268 authority to search property that did not belong to Cornwell.
¶ 13 However, Cornwell did raise the nexus argument. Defense counsel asserted that "the law does require considerably more nexus between the place being searched, in this case the car, and a probation violation." 1 VRP at 134. He also raised the argument in response to a hypothetical question posed by the judge. The judge asked whether CCO Grabski would have had authority to search the car if Cornwell had stolen it. Id. at 127. Defense counsel said no "because there's no reason to believe that there's any nexus between that and any violation of his DOC conditions." Id. at 128. In addition, both the State and Cornwell discussed the meaning of RCW 9.94A.631, the legislature's codification of the probation exception to the warrant requirement.
¶ 14 We conclude that the issue was properly preserved. Moreover, an ongoing split in the Court of Appeals, as discussed further below, requires our review in this case. RAP 13.4(b)(2). We therefore address the merits of Cornwell's claim.
B. Searches pursuant to article I, section 7
¶ 15 Article I, section 7 of the Washington Constitution provides a robust privacy right. It states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST . art. I, § 7. The "authority of law" needed is generally a warrant, "subject to 'a few jealously and carefully drawn exceptions.' " State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999) (internal quotation marks omitted) (quoting State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996) ).
¶ 16 However, individuals on probation are not entitled to the full protection of article I, section 7. State v. Olsen, 189 Wash.2d 118, 124, 399 P.3d 1141 (2017). They have reduced expectations of privacy because they are " 'serving their time outside the prison walls.' " Id. at 124-25, 399 P.3d 1141 (quoting *302 State v. Jardinez, 184 Wash. App. 518, 523, 338 P.3d 292 (2014) ). Accordingly, it is constitutionally permissible for a CCO to search an individual based only on a "well-founded or reasonable suspicion of a probation violation," rather than a warrant supported by probable cause. State v. Winterstein, 167 Wash.2d 620, 628, 220 P.3d 1226 (2009). The legislature has codified this exception to the warrant requirement at RCW 9.94A.631.[2] The statute reads in relevant part, "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a [CCO] may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." RCW 9.94A.631(1).
¶ 17 The question presented in this case is whether article I, section 7 requires a nexus between the property searched and the alleged probation violation in order to protect the reduced privacy interest of individuals on probation. While the parties agree that we should determine the scope of a CCO's search consistent with RCW 9.94A.631, their positions on the nexus requirement reflect an ongoing split in the Court of Appeals.
¶ 18 The State asks us to endorse the line of reasoning in State v. Parris, where a Division Two panel concluded that "probationers do not have a reasonable expectation of privacy in their residences, vehicles, or personal belongings." 163 Wash. App. 110, 123, 259 P.3d 331 (2011). Because they do not have a reasonable expectation of privacy, the State argues, any probation violation warrants a search of all the individual's property, regardless of whether it is likely to contain any evidence of the alleged violation.
¶ 19 Meanwhile, Cornwell relies on the reasoning of Division Three in Jardinez, 184 Wash. App. 518, 338 P.3d 292. Concluding *303 that RCW 9.94A.631 is silent on the nexus requirement, the court used the following Sentencing Guidelines Commission commentary on a predecessor statute as evidence of legislative intent:
"The Commission intends that Community Corrections Officers exercise their arrest power's sparingly, with due consideration *1269 for the seriousness of the violation alleged and the impact of confinement on jail population. Violations may be charged by the Community Corrections Officer upon notice of violation and summons, without arrest.
"The search and seizure authorized by this section should relate to the violation which the Community Corrections Officer believes to have occurred. "
Id. at 529, 338 P.3d 292 (quoting DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981, at app. I-13 (1985).) The court held the commentary "demands a nexus between the searched property and the alleged crime," which it noted was also "consistent with general principles of search and seizure law." Id.
¶ 20 We agree with Jardinez that RCW 9.94A.631 is silent on the nexus requirement. We therefore resolve the question presented and the split in the Court of Appeals by interpreting the statute in a manner that conforms to article I, section 7 as permitted by a reasonable reading of the statute's plain language. Utter ex rel. State v. Bldg. Indus. Ass'n of Wash., 182 Wash.2d 398, 434, 341 P.3d 953 (2015).
¶ 21 It is already established that in accordance with article I, section 7, individuals on probation do not forfeit all expectations of privacy in exchange for their release into the community. Olsen, 189 Wash.2d at 125, 399 P.3d 1141. While the State may closely supervise them to advance the probation system's goals of promoting rehabilitation and protecting public safety, its authority is limited. Id. at 128-29, 399 P.3d 1141. Individuals' privacy interest can be reduced "only to the extent 'necessitated by the legitimate demands of the operation of the *304 [community supervision] process.' " Id. at 125, 399 P.3d 1141 (quoting Parris , 163 Wash. App. at 117, 259 P.3d 331 ).
¶ 22 When there is a nexus between the property searched and the suspected probation violation, an individual's reduced privacy interest is safeguarded in two ways. First, a CCO must have "reasonable cause to believe" a probation violation has occurred before conducting a search at the expense of the individual's privacy. RCW 9.94A.631(1). This threshold requirement protects an individual from random, suspicionless searches. Second, the individual's privacy interest is diminished only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search. The individual's other property, which has no nexus to the suspected violation, remains free from search.
¶ 23 In contrast, allowing searches without a nexus between the property searched and the alleged probation violation destroys what remains of the individual's privacy. While a CCO must still have reasonable cause to believe there has been a violation, no property is free from search and the CCO does not need to suspect that the search will produce evidence of any particular probation violation. Much like a suspicionless search, an open-ended probation search may be used as " 'a fishing expedition to discover evidence of other crimes, past or present.' " Olsen, 189 Wash.2d at 134, 399 P.3d 1141 (quoting State v. Combs, 102 Wash. App. 949, 953, 10 P.3d 1101 (2000) ).
¶ 24 For example, the defendant in Jardinez failed to report for a meeting and admitted marijuana use, both violations of his conditions of release. 184 Wash. App. at 521, 338 P.3d 292. The CCO used these violations as the basis for a search of Jardinez's iPod, during which he found a photo of Jardinez with a firearm. The photo was admitted as evidence at trial, which resulted in a firearm conviction, even though the CCO "had no reason to believe ... Jardinez possessed a firearm" before conducting the search. Id. at 528, 338 P.3d 292. Such *305 sweeping searches conflict with article I, section 7's mandate that an individual's privacy right be reduced only when and to the extent necessary . Olsen, 189 Wash.2d at 125, 399 P.3d 1141.
¶ 25 Meanwhile, there is no compelling argument that the " 'legitimate demands' " of the probation system require open-ended property searches.[3] Id. (internal quotation *1270 marks omitted) (quoting Parris, 163 Wash. App. at 117, 259 P.3d 331 ). Parris well illustrates that requiring, a nexus does not impede the State's ability to effectively supervise individuals on probation. Derek Lee Parris was on probation after he failed to register as a sex offender. Parris, 163 Wash. App at 113, 259 P.3d 331. He violated numerous probation conditions, including contacting minors, failing a urinalysis test, and failing to participate in treatment. Id. at 113-14, 259 P.3d 331. His mother also informed his CCO that he may have obtained a firearm in violation of his probation. Id. at 120, 259 P.3d 331.
¶ 26 The CCO searched Parris' room, where she found syringes, pornography, empty alcohol bottles, and three memory cards, one of which was marked with the name of a female minor. Id. at 115, 259 P.3d 331. When she viewed their contents, she found sexually explicit videos of Parris and a minor as well as photographs of guns. Id. A nexus between the memory cards and a suspected probation violation was undoubtedly satisfied because the CCO "believed she might find evidence of [an illegal firearm]" on the cards. Id. at 120, 259 P.3d 331. Thus, Parris shows that searches tethered to a particular probation condition are a practical and effective tool that further the State's interest in monitoring compliance and promoting public safety while still protecting individuals from arbitrary searches.
*306 ¶ 27 In sum, we believe "[t]he goals of the probation process can ... be accomplished with rules and procedures that provide both the necessary societal protections as well as the necessary constitutional protections." State v. Lampman, 45 Wash. App. 228, 233, 724 P.2d 1092 (1986). Limiting the scope of a CCO's search to property reasonably believed to have a nexus with the suspected probation violation protects the privacy and dignity of individuals on probation while still allowing the State ample supervision. We therefore hold that article I, section 7 permits a warrantless search of the property of an individual on probation only where there is a nexus between the property searched and the alleged probation violation.
¶ 28 Applying the nexus requirement to this case, we conclude CCO Grabski's search of Cornwell's car exceeded its lawful scope. While CCO Grabski may have suspected Cornwell violated other probation conditions, the only probation violation supported by the record is Cornwell's failure to report.[4] This court has already determined that there is no nexus between property and the crime of failure to report. State v. Patton, 167 Wash.2d 379, 395, 219 P.3d 651 (2009). Moreover, CCO Grabski's testimony at the CrR 3.6 hearing confirmed that he had no expectation that the search would produce evidence of Cornwell's failure to report, and that he searched the vehicle only because Cornwell "ha[d] a felony warrant for his arrest ... in violation of his probation [and] [h]e's driving the vehicle." 1 VRP at 93. He explained that his search was not limited in scope because "[i]f there is anything in the vehicle, whether it is in a suitcase, clothing, I'm going to go through those items." Id. at 94. He also testified that he was looking for unrelated probation violations because he searched the vehicle "to make sure there's no further violations of his probation."
*307 Id. at 93 (emphasis added). CCO Grabski's search was clearly " 'a fishing expedition,' " which article I, section 7 does not permit. Olsen, 189 Wash.2d at 134, 399 P.3d 1141 (quoting Combs, 102 Wash. App. at 953, 10 P.3d 1101 ).
¶ 29 Because there was no nexus to Cornwell's suspected probation violation, the search of the car Cornwell was driving was unlawful. The evidence seized therefore should have been suppressed in accordance with our well-established exclusionary rule. State v. Ibarra-Cisneros, 172 Wash.2d 880, 885-86, 263 P.3d 591 (2011). We thus reverse the Court of Appeals and Cornwell's convictions.
*1271 CONCLUSION
¶ 30 Individuals on probation have a limited, but constitutionally protected, privacy interest that does not permit CCOs to conduct open-ended property searches. For a search to be lawful, there must be a nexus between the property searched and the alleged probation violation. In this case, the search of Cornwell's vehicle was unlawful because there was no nexus between the search and his suspected probation violation of failure to report to DOC. The evidence seized during the search should have been suppressed. Accordingly, we reverse the Court of Appeals and Cornwell's convictions.
WE CONCUR:
Fairhurst, C.J.
Johnson, J.
Stephens, J.
Wiggins, J.
González, J.
Gordon McCloud, J.

The trial court judge did not make findings of fact or conclusions of law at the CrR 3.6 hearing, and so the following facts are based on testimony presented at the hearing unless otherwise noted.

A CCO's authority to conduct a property search is derived from an authorizing probation condition in a valid, court-ordered judgment and sentence. However, the parties agree that the probation condition, and any limitations on the scope of searches conducted pursuant to its authorization, should be interpreted consistently with RCW 9.94A.631.

Citing Olsen, the dissent asserts that searches without a nexus are constitutionally permissible because, like random urinalysis (UA) testing of individuals on probation for driving under the influence, they are a valid monitoring tool. Dissent at 1273. The comparison is unpersuasive. In Olsen, we upheld random UA testing because it was used to evaluate compliance with a particular probation condition that prohibited drug and alcohol use. 189 Wash.2d at 133, 399 P.3d 1141. Here, a search without a nexus to an alleged violation is not directly linked to evaluating compliance with a particular probation condition.

The dissent claims that there was a sufficient nexus in this case by inferring from the record that Cornwell violated other conditions of his probation. Dissent at 1271-72. However, the record indicates that the State failed to elicit testimony that established CCO Grabski had reasonable cause to believe evidence of any probation violation would be found inside the car.