IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40239-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOEL JAMENYA AMUSAVI, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Joel Amusavi appeals after a jury found him guilty of

five counts of child molestation in the first degree. He argues he received ineffective

assistance of counsel due to counsel's decision not to request an instruction permitting

the jury to convict him of fourth degree assault, a lesser offense. He also challenges three

community custody conditions of his sentence.

We disagree with Amusavi's argument that he received ineffective assistance of

counsel but agree with one of his sentencing challenges. We affirm Amusavi's

convictions but remand for the trial court to modify one community custody condition.

FACTS

The State charged Joel Amusavi with seven counts of child sexual abuse against three victims: I.M.H., L.M.M., and T.N.D.[†]  Specifically, Amusavi was charged with two counts of child molestation in the first degree of I.M.H., one count of rape of a child in the first degree of L.M.M., one count of child molestation in the first degree of L.M.M., and three counts of child molestation in the first degree of T.N.D.

To evaluate the reasonableness of defense counsel's strategy, we describe the statements and testimonies of the child victims.  We omit lurid details.

### A.  I.M.H.

On February 27, 2019, I.M.H. disclosed to her mother an incident that occurred at Amusavi and his wife Purity Femino's house during a family gathering.  I.M.H. told her mother she became tired, so Femino invited her to lie on the bed in the master bedroom and watch television.  Amusavi soon entered the room and began tickling her, and she asked him to stop.  I.M.H. said that Amusavi proceeded to rub her chest and place his hand underneath her pants.  At her forensic interview, I.M.H. said that Amusavi rubbed her chest over her shirt and moved his hand underneath her underwear.

---

[†] To protect the privacy interests of the minor children, we use their initials throughout this opinion.  Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa. gov/appellate_trial_courts.

### B.  L.M.M.

In January 2021, L.M.M. revealed to her mother she was sexually abused by Amusavi at his house.  L.M.M. said she and her close friend T.N.D. were in the master bedroom with Amusavi.  She said, after T.N.D. left to use the restroom, Amusavi put his hands in her pants and inside her underwear.

In a recorded forensic interview, L.M.M. repeated much of what she told her mother.  She also said, after Amusavi left the room, she told T.N.D. what he had done.

### C.  T.N.D.

Shortly after L.M.M. disclosed Amusavi's abuse to her mother, L.M.M.'s mother warned T.N.D.'s mother and asked her to find out if Amusavi had done anything similar to her daughter.  T.N.D. told her mother that Amusavi rubbed his hands on her thighs, close to her private part.

T.N.D. underwent a physical examination and a forensic interview.  During her physical examination, T.N.D. told the nurse that Amusavi touched her on her upper thighs.  She told the forensic interviewer that Amusavi touched her inappropriately on three separate occasions.

*Trial*

The State attempted to establish that one of the child victims and the other two had little communication with each other, and that Femino and the mothers had little contact

3

with each other. The trial testimony often refuted its theme. Also, the testimonies of the child victims differed from their recorded forensic interviews.

In closing, defense counsel spoke in detail about several inconsistencies between each child's recorded forensic interviews and their trial testimonies. Also, defense counsel emphasized that the evidence did not support the State's theme that the children and mothers lacked the opportunity to fabricate claims against Amusavi. Finally, defense counsel pointed the jury to evidence suggesting that the child victims' assertions in their forensic interviews were manipulated.

The jury returned a mixed verdict. It found Amusavi not guilty of one count of child molestation against I.M.H. and not guilty of rape of a child against L.M.M. The jury returned guilty verdicts for the remaining counts.

The court sentenced Amusavi to concurrent standard range sentences of 198 months on each count. The court also imposed community custody conditions, the following of which are relevant for our review:

> (a) **MANDATORY CONDITIONS:** . . . .
> . . . .
> (3) Not consume controlled substances except pursuant to lawfully issued prescriptions;
> . . . .
> (8) Remain within geographic boundary, as set forth in writing by the Community Corrections Officer.
> . . . .
> (b) **OTHER CONDITIONS**: . . . .

4

. . . .
(16) That you submit to urinalysis testing as directed by your
Community Corrections Officer.
(17) That you allow home visits by the Department of Corrections.

Clerk's Papers (CP) at 131-32.

Amusavi appealed to this court.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of counsel, a defendant must

demonstrate that defense counsel's performance was deficient and that the deficient

performance caused prejudice to the defendant. *State v. Levy*, 156 Wn.2d 709, 729, 132

P.3d 1076 (2006). Counsel's performance is not deficient unless it falls below an

objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35,

899 P.2d 1251 (1995). There is a strong presumption that defense counsel performed

reasonably. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Counsel's

performance is not deficient if it is a legitimate trial strategy or tactic. *Id*. at 863.

Prejudice exists if there is a reasonable probability that the outcome of the

proceedings would have been different absent the deficient performance. *State v.

Bertrand*, 3 Wn.3d 116, 129, 546 P.3d 1020 (2024). This is lower than a preponderance

5

standard; however, the defendant must show more than a conceivable effect on the outcome of the trial. *Id*.

Because Amusavi claims defense counsel was ineffective in not requesting instructions for a lesser included offense, he must first satisfy a two-pronged test established in *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). *See Bertrand*, 3 Wn.3d at 142. A defendant is entitled to an instruction for a lesser included offense if (1) each element of the lesser offense is a necessary element of the greater offense (legal prong), and (2) the evidence supports an inference that the lesser crime was committed (factual prong). *Workman*, 90 Wn.2d at 447-48. "The factual prong of *Workman* is satisfied only if based on some evidence admitted, the jury could reject the greater charge and return a guilty verdict on the lesser." *State v. Coryell*, 197 Wn.2d 397, 407, 483 P.3d 98 (2021).

### *Application of the* Workman *test*

The State does not dispute that the legal prong is satisfied, i.e., fourth degree assault may be a lesser included offense of child molestation. *See Bertrand*, 3 Wn.3d at 142; *State v. Stevens*, 158 Wn.2d 304, 311, 143 P.3d 817 (2006). The State disagrees, however, that the factual prong is satisfied.

To determine whether the factual prong for a fourth degree assault instruction is satisfied, we must first address what evidence is needed for such an instruction. Fourth degree assault occurs when there is an unlawful touching made with criminal intent. *State v. Jarvis*, 160 Wn. App. 111, 117, 246 P.3d 1280 (2011). A touching is unlawful if it is either harmful or offensive and made without consent or privilege. *Id.*

Amusavi contends there was sufficient evidence presented at trial for a reasonable trier of fact to find that he committed only fourth degree assault. We agree. Our review of the evidence, including the inconsistencies of the young victims' various statements, confirms that a reasonable jury could find that Amusavi touched one or more of them in an offensive manner but not for sexual gratification.

We conclude that Amusavi has satisfied both *Workman* prongs. We proceed now to evaluate the merits of his ineffective assistance of counsel claim.

*Deficient Performance*

Amusavi contends that the all-or-nothing trial strategy employed by defense counsel constitutes deficient performance. He argues that defense counsel's refusal to present the jury with a third option posed an unreasonable risk of a conviction. The State argues that defense counsel's decision not to request the lesser included instruction was a legitimate trial tactic. We agree with the State.

7

Recently, the Washington Supreme Court recognized that both the inclusion and exclusion of an instruction for a lesser offense each carry inherent risks that may encourage the jury to convict a defendant:

> Lesser included offense instructions are important because if a defendant is charged with only one crime, the jury must choose between two harsh options: either convict the defendant as charged or allow them to go free. This can "create a risk that the jury will convict the defendant despite having reasonable doubts." A lesser included offense instruction provides a third option, allowing the jury to reach a "compromise verdict" by convicting the defendant on a less serious offense than the one charged by the State.
>
> However, the availability of a compromise verdict is not always beneficial to the defendant. For instance, defense counsel, in consultation with the defendant, may legitimately pursue a strategy of asserting the defendant's complete innocence. In such a case, *a lesser included offense instruction might actually "weaken*[ ] *the defendant's claim" by suggesting that they are guilty of some offense, even if they are not guilty of the offense charged by the State.* Thus, defense counsel might reasonably choose to pursue an "all or nothing strategy," requiring the jury to either convict the defendant as charged or acquit the defendant entirely, without providing the option of a compromise verdict on a lesser included offense.
>
> Due to the significant risks of pursuing an all or nothing strategy, "the decision to exclude or include lesser included offense instructions is a decision that requires input from both the defendant and [their] counsel." However, the decision "ultimately rests with [trial] counsel," and if counsel's decision "can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Thus, "[t]he inclusion or exclusion of lesser included offense instructions is a tactical decision for which defense attorneys require significant latitude."*

*Bertrand*, 3 Wn.3d at 131-32 (emphasis added) (alterations in original) (citations omitted).

Defense counsel's decision not to request a fourth degree assault instruction was a legitimate trial strategy. As the *Bertrand* court recognized, there is often no risk-free option in choosing whether to request instructions for a lesser offense. Defense counsel's decision not to request an instruction on fourth degree assault required the jury to choose between convicting Amusavi of serious crimes—despite numerous conflicting statements and the opportunity for fabrication—and acquittal. It may well have been safer to argue, as defense counsel did, that the evidence was too inconsistent to convict Amusavi of serious crimes than to imply that some or all of the claimed touchings of intimate areas occurred but were merely offensive and not criminal. We conclude that defense counsel's choice not to request a lesser included fourth degree assault instruction was a legitimate trial strategy.

Because a claim of ineffective assistance requires a defendant to satisfy two prongs and because Amusavi has not satisfied the first, we do not address the prejudice prong.

B.      COMMUNITY CUSTODY CONDITIONS

*1.      Geographic restriction*

Amusavi argues the community custody condition imposing a geographic restriction to be defined by his community corrections officer (CCO) is unconstitutionally vague. "A condition of community custody is unconstitutionally vague if it either fails to

9

give fair warning of what is forbidden or fails to give ascertainable standards that will

prevent arbitrary enforcement." *State v. Johnson*, 197 Wn.2d 740, 747, 487 P.3d 893

(2021).

The State initially conceded this issue, but later equivocated by citing a recent

additional authority, *State v. Lundstrom*, No. 86537-4-1 (Wash. Ct. App. July 28, 2025),

https://www.courts.wa.gov/opinions/pdf/865374.pdf. There, Division One of this court

rejected the argument that the challenged condition is unconstitutionally vague. The

court reasoned:

> The statutory framework authorizes a CCO to establish and
> modify conditions of community custody. RCW 9.94A.704(2)(a).
> But it limits that authority to conditions "reasonably related to . . .
> [t]he crime of conviction, the offender's risk of reoffending, or the
> safety of the community." *See* RCW 9.94A.704(7)(b). So, any
> CCO-imposed geographical limitation must be reasonably related
> to one of those categories. And if an offender disagrees with the
> validity of a CCO-imposed geographical condition, they may, within a
> specified time, "request an administrative review" of the condition.
> RCW 9.94A.704(7)(b). Those sufficiently ascertainable standards protect
> against arbitrary enforcement.

*Lundstrom*, slip op. at 4. We fully agree with *Lunstrom*'s analysis and conclusion and

reject Amusavi's constitutional argument.

### 2. *Suspicionless urinalysis testing*

Amusavi contends the suspicionless urinalysis testing requirement violates article

I, section 7 of the Washington Constitution. He claims that because controlled

10

No. 40239-8-III
*State v. Amusavi*

substances played no role in the underlying offense, the trial court was not permitted to require suspicionless urinalysis testing. Amusavi challenges this condition only if the Supreme Court reverses this court's decision in *State v. Nelson*, No. 39110-8-III, slip op. at 29-30 (Wash. Ct. App. Feb. 13, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/391108_unp.pdf, *aff'd*, __ Wn.3d __, 565 P.3d 906 (2025)

While this appeal was pending, the Washington Supreme Court upheld our decision in *Nelson*, 565 P.3d 906. The court found that random urinalysis testing may be imposed by trial courts to monitor compliance with a condition requiring defendants to refrain from possessing or consuming alcohol or controlled substances. *Id*. at 917. It is not a requirement that alcohol or controlled substances play a role in the crime for the trial court to require urinalysis testing. *Id*. at 917-18. The trial court prohibited Amusavi from consuming controlled substances, and random urinalysis testing was properly imposed to monitor his compliance with this condition.[1] Therefore, we affirm the trial court's decision to impose this condition.

---

[1] When imposing a term of community custody, trial courts are required, unless waived, to include a condition prohibiting a defendant from possessing or consuming controlled substances. RCW 9.94A.703(2)(c). This is true regardless of whether controlled substances contributed to the offense.

11

### 3. *Suspicionless home visits*

Amusavi argues, and the State concedes, that the community custody condition allowing the Department of Corrections (DOC) to conduct suspicionless home visits violates his article I, section 7 right not to be disturbed in his private affairs without authority of law. Individuals subject to community custody possess reduced privacy interests; however, they "do not forfeit all expectations of privacy in exchange for their release into the community." *State v. Cornwell*, 190 Wn.2d 296, 303, 412 P.3d 1265 (2018). RCW 9.94A.631(1) requires offenders to "submit to a search and seizure of the offender's person, residence, automobile, or other personal property" if there is reasonable cause to believe the offender has violated a condition of community custody. Here, the pertinent condition does not explicitly require the DOC to have reasonable cause prior to searching Amusavi's residence as afforded by RCW 9.94A.631(1). We reverse and direct the trial court to modify this provision to require reasonable cause prior to a search of Amusavi's residence.

## C. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

Amusavi submits seven issues in two separate SAGs for our review. Under RAP 10.10(c), we "will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." In his first, second, and sixth issues, Amusavi makes various disagreements with the State's

12

assertions at trial and recites facts that are mostly irrelevant to the case. He fails to identify an error made by the trial court for each of these grounds.

For his third issue, Amusavi contends that the jury should have been able to consider the results of a polygraph test he took during the detective's investigation of I.M.H. "It is a long-standing rule in Washington that the results of polygraph examinations are not admissible, except by stipulation." *State v. Sutherland*, 94 Wn.2d 527, 529, 617 P.2d 1010 (1980). No stipulation was made at trial.

In his fourth issue, Amusavi contends that the court's appointment of a specific juror as the designated notetaker was a breach of court rules. Amusavi has failed to articulate how the appointment of a designated notetaker amounts to error. Amusavi also contends that the trial proceeded for long hours, which exhausted the jury. Again, Amusavi has failed to inform this court of a legal error.

For his fifth issue, Amusavi claims the State persuaded the jury and the trial court judge that he was untrustworthy. At trial, Femino testified that she went to the bank and removed Amusavi from her bank account. Amusavi fails to inform this court of the grounds for why admission of this statement was error.

Finally, Amusavi contends if the geographical restriction imposed by the court is removed, then someone might convince his CCO that he cannot be safely released and this could be used to justify denying his early release. This is not a legitimate concern.

No. 40239-8-III
*State v. Amusavi*

As noted above, Amusavi has the right to seek administrative review of any condition his CCO might impose, including a condition that effectively prevents his early release.

Affirm convictions, remand to modify one community custody condition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.

Murphy, J.

14