IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40169-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NICHOLAS DUANE HAYES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Nicholas Hayes pleaded guilty to delivery of methamphetamine and was ordered to serve 90 days of electronic home monitoring (EHM) and 12 months of community custody through the Department of Corrections (DOC). While on EHM, Mr. Hayes provided three urine samples that tested positive for methamphetamine and other drugs. The positive urinalysis (UA) results led DOC officers to conduct a search of Mr. Hayes' residence and a wooden shed on his property. The search yielded boxes of drug paraphernalia, digital scales, methamphetamine, heroin, fentanyl, and hydrocodone.

The State charged Mr. Hayes with three counts of possession of a controlled substance with intent to manufacture or deliver. Mr. Hayes moved to suppress evidence and dismiss the charges, arguing the DOC lacked authority to search his urine, residence, and shed because the conditions of his community custody had yet to commence. He further asserted the violations—his positive UA results—did not create a sufficient nexus to warrant a search of his residence and shed. The trial court denied the motion, and Mr. Hayes was later convicted of all three counts.

Mr. Hayes appeals, arguing the trial court erred in denying his motion to suppress because the probationer exception did not apply to the DOC's warrantless search and a sufficient nexus did not exist between his positive UA results and the search of his residence and shed. We disagree with both contentions and affirm.

BACKGROUND

Mr. Hayes pleaded guilty to delivery of methamphetamine in May 2018. He was sentenced on April 19, 2021, nearly three years later. Mr. Hayes had four convictions for delivery of a controlled substance, spanning from 1985 to 2004, at the time of his sentencing. Although Mr. Hayes' standard range sentence was "20+ to 60 months," the court sentenced Mr. Hayes to either 90 days of EHM through Tri-Cities Monitoring, commencing by May 31, 2021, or a 90-day jail sentence, commencing June 1, 2021. Clerk's Papers (CP) at 13.

Mr. Hayes was ordered to serve 12 months of community custody through the

DOC. In part, the conditions of his community custody required Mr. Hayes to "not

consume controlled substances except pursuant to lawfully issued prescriptions," "not

unlawfully possess controlled substances," "not to possess or consume [marijuana]

without a valid prescription," and "submit to UA[ testing] as directed by the DOC." CP

at 14-15. The judgment and sentence further provided:

> The defendant shall report to DOC, 325 N. Chelan, Suite A, P.O. Box 2869,
> Wenatchee, WA 98807-2869, within 72 hours after this sentencing. If the
> defendant is immediately placed in custody, then the defendant shall report
> to DOC not later than 72 hours after release.

CP at 15. Relatedly, the judgment and sentence stated, "The conditions of community

custody shall begin immediately upon release from confinement unless otherwise set

forth here." CP at 15.

On June 7 and June 14, 2021, while Mr. Hayes was serving his 90-day EHM

sentence, the DOC directed him to provide urine samples. Mr. Hayes complied, and both

urine samples tested positive for methamphetamine and marijuana. Mr. Hayes again

reported to the DOC as directed on June 21 and provided another urine sample that tested

positive for methamphetamine, opiates, marijuana, and cocaine. Based on the positive

UA results, DOC officers arrested Mr. Hayes. DOC officers found over $1,000 on Mr.

Hayes while searching him. DOC officers informed Mr. Hayes of their intent to search

his residence and inquired if any controlled substances would be found. Mr. Hayes

responded, "[T]here shouldn't be anything there, just some marijuana." CP at 33. A

DOC officer overheard Mr. Hayes telling his cousin something to the effect of "you know the shed, not mine" as Mr. Hayes was being escorted to the parking lot. CP at 36.

DOC officers conducted a search of Mr. Hayes' residence and found a square of aluminum foil with burn marks, a "baggie" of white powder, multiple unused "baggies," and a ledger containing dollar figures and names. CP at 33. When DOC officers asked Mr. Hayes about a wooden shed on the property, Mr. Hayes responded that it belonged to "Janie from Moses Lake" and contained her belongings. CP at 34. Mr. Hayes claimed not to know Janie's last name nor how to contact her. After breaching the lock on the shed, DOC officers found boxes of drug paraphernalia, digital scales, a backpack full of marijuana, and a backpack containing methamphetamines, heroin, fentanyl, and hydrocodone pills.

Mr. Hayes was charged in an amended information with three counts of possession of a controlled substance with intent to manufacture or deliver. Mr. Hayes moved to suppress evidence, arguing the DOC lacked the authority to conduct a warrantless search of his person and residence because his supervision through the DOC did not commence until the completion of his EHM sentence.

The trial court denied the motion to suppress following a CrR 3.6 hearing, reasoning that the search fell under the probationer exception to the warrant requirement. The court found, in part:

> 2.1 On April 19, 2021, the Defendant was sentenced under cause number 17-1-00183-3 in Douglas County Superior Court to 90 days of electronic

home monitoring ("EHM") and 12 months of community custody supervised by the Department of Corrections ("DOC") in connection with one count of Delivery of Methamphetamine.

2.2 Paragraph 4.2(C) of the Judgment and Sentence in cause number 17-1-00183-3 reads that "the conditions of community custody shall begin immediately upon release from confinement unless otherwise set forth here:" followed by a blank with nothing set forth in the blank.

2.3 Paragraph 4.2(B) of the Judgment and Sentence in cause number 17-1-00183-3 reads that "the defendant shall report to DOC . . . within 72 hours after this sentencing."

2.4 Based on the Court's review of the audio recording of the sentencing hearing for cause number 17-1-00183-3, there was discussion about the 12 month period of DOC community custody not beginning until after the 90 days of EHM had been completed; however, the Defendant was not told that he would not be subject to DOC conditions immediately upon sentencing.

CP at 73. The trial court concluded Mr. Hayes was "subject to DOC conditions

immediately upon sentencing, not upon completion of his 90 days of EHM." CP at 74.

The court further concluded:

3.6 A community corrections officer may require an offender to submit to a search of the offender's residence, automobile, or other personal property if there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence. RCW 9. 94A.63l. An officer does not need consent to search an offender's home if the search falls within the statutory "probationer exception." *State v. Campbell*, 103 Wn.2d 1, 22, 691 P.2d 929, 941 (1984).

3.7 DOC officers did not need to obtain a search warrant or consent from the Defendant in order to search the Defendant's residence; the positive test for methamphetamines constituted a reasonable cause for DOC officers to believe that the Defendant had violated a condition or requirement of his sentence, thereby satisfying the probationer exception to the warrant requirement.

CP at 74.

Mr. Hayes filed a motion for reconsideration, arguing that the positive UA results did not constitute possession because the person's power to control, possess, use, or dispose of illicit substances ends on consumption. Specifically, Mr. Hayes argued there was no evidence "to establish a nexus between the violation and the place searched." CP at 76. The court denied the motion for reconsideration based on the DOC's authority to search under RCW 9.94A.631(1).

Mr. Hayes was later found guilty of all counts and sentenced to 60 months on each count, all to be served concurrently.

Mr. Hayes appeals.

ANALYSIS

WHETHER MR. HAYES WAS SUBJECT TO THE CONDITIONS OF COMMUNITY CUSTODY WHILE ON EHM

Mr. Hayes argues he was not on supervision through the DOC while serving his EHM sentence and therefore was not subject to the conditions of community custody. He contends the court erred in denying his motion to suppress the evidence seized from his residence and shed. We disagree.

On review of a trial court's order denying a motion to suppress evidence, the trial court's findings of fact are reviewed for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). "Substantial evidence exists where there is a sufficient quantity of evidence . . . to persuade a fair-minded, rational person of the truth of the

6

finding." *Id*. Unchallenged findings of fact are verities on appeal. *Id*. We review de novo whether a trial court's conclusions of law are properly derived from the findings of fact. *State v. Pierce*, 169 Wn. App. 533, 544, 280 P.3d 1158 (2012).

Statutory interpretations are issues of law that we also review de novo. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 457, 430 P.3d 655 (2018). When we engage in statutory interpretation, "our fundamental objective is to determine and give effect to the intent of the legislature." *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012). "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). Unambiguous plain language requires no construction. *Id.*

Community custody conditions must be consistent with the limited authority granted by the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *In re Post Sentence Review of Combs*, 176 Wn. App. 112, 117, 308 P.3d 763 (2013). "The judgment must be read as a whole and in connection with the record of cause in which it is entered, and if, when so read, it is not indefinite or uncertain, it is neither void nor voidable." *In re Habeas Corpus of Clark*, 24 Wn.2d 105, 112, 163 P.2d 577 (1945).

RCW 9.94A.707 states:

(1) Community custody shall begin: (a) Upon completion of the term of confinement; or (b) at the time of sentencing if no term of confinement is ordered.

(2) When an offender is sentenced to community custody, the offender is subject to the conditions of community custody as of the date of sentencing, unless otherwise ordered by the court.

Relying on the provision in the judgment and sentence that states, "The conditions of community custody shall begin immediately upon release from confinement unless otherwise set forth here," Mr. Hayes argues the conditions of community custody took effect on his release from his EHM, not on his sentencing date. CP at 15.

We are unpersuaded by Mr. Hayes' argument. Mr. Hayes was released from confinement at the time of sentencing. Accordingly, RCW 9.94A.707 subjected Mr. Hayes to the conditions of his community custody effective April 19, 2021, the date of his sentencing. To conclude otherwise would place a 130-day void between the court's imposition of its sentence and the conclusion of Mr. Hayes' EHM sentence.[1] Because the court allowed Mr. Hayes a delayed report date to serve his EHM sentence, the only logical "release from confinement" for purposes of his community custody conditions commencing would have been his release from pretrial detention.[2]

---

[1] Mr. Hayes was sentenced on April 19, 2021, and was given until May 31, 2021, to begin his 90-day EHM sentence.

[2] Jurisdiction generally transfers from the trial court to the DOC on entry of a judgment and sentence. *State v. Harkness*, 145 Wn. App. 678, 685, 186 P.3d 1182 (2008).

In *In re Personal Restraint of Dalluge*, 162 Wn.2d 814, 177 P.3d 675 (2008), our Supreme Court held that offenders remain subject to DOC supervision and conditions of community custody while confined. This is grounded in the legislature's intent "'that all terms and conditions of an offender's supervision in the community . . . not be curtailed by an offender's absence from supervision for any reason including confinement in any correctional institution.'" *Id.* (quoting LAWS OF 2000, ch. 226 § 1) (emphasis omitted). If an offender remains under the DOC's authority while confined, it follows that the offender would also be subject to the conditions of community custody once released from the trial court's jurisdiction.

In harmonizing the provisions of the judgment and sentence, we also conclude that Mr. Hayes was subject to the conditions of community custody on being sentenced. Reading the judgment and sentence in its entirety, and within the context of the record, shows a consistent intent that the DOC supervision and conditions of community custody begin immediately following sentencing.

Although paragraph 4.2(c) of the judgment and sentence states that community custody begins "upon release from confinement," it also explicitly directs Mr. Hayes to report to the DOC within 72 hours of sentencing. CP at 15. Although these provisions appear inconsistent, when read together, it is apparent that the conditions of community custody began at the time of sentencing since Mr. Hayes was released from confinement. Interpreting "upon release from confinement" to delay the DOC's supervision would not

only contradict the judgment and sentence's explicit directive to report to the DOC within 72 hours but would also disrupt the SRA's intended continuity of supervision.

Lastly, RCW 9.94A.707 delineates between when a *term* of community custody begins and when the *conditions* of community custody commence. The statute provides, "Community custody *shall begin*: (a) Upon completion of the term of confinement; or (b) at the time of sentencing if no term of confinement is ordered." RCW 9.94A.707(1) (emphasis added). The statute continues, "When an offender is sentenced to community custody, the offender is subject to the *conditions* of community custody as of the date of sentencing, unless otherwise ordered by the court." RCW 9.94A.707(2) (emphasis added).

The structure of RCW 9.94A.707 makes clear that the commencement provision in subsection (1) governs only the term of community custody while subsection (2) independently governs the conditions of community custody. The distinction ensures that the term of community custody is tolled during confinement, in adherence to RCW 9.94A.171(3)(a), while the conditions remain effective on sentencing unless otherwise directed. Our Supreme Court has recognized the legislature's intent of granting the DOC's authority over offenders "while offenders on community supervision are confined." *Dalluge*, 162 Wn.2d at 819. Consequently, periods of confinement do not impact the authority of the DOC to enforce the conditions of community custody, only the duration of the community custody.

10

In reading the judgment and sentence in conjunction with the governing statutes and legislative intent, Mr. Hayes was released from confinement at the time of sentencing and therefore remained subject to the conditions of community custody throughout his EHM sentence. The trial court did not err in concluding the probationer exception to the warrant requirement applied to Mr. Hayes' challenged search.

WHETHER MR. HAYES' POSITIVE UA RESULTS PERMITTED THE DOC TO SEARCH HIS RESIDENCE

Mr. Hayes argues there was no nexus between his positive UA results and the warrantless search of his property. We disagree.

We review de novo conclusions of law pertaining to a trial court's suppression of evidence. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

Generally, warrantless searches are per se unreasonable. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). However, there are some "'carefully drawn exceptions.'" *State v. Cornwell*, 190 Wn.2d 296, 301, 412 P.3d 1265 (2018) (quoting *Ladson*, 138 Wn.2d at 349). Offenders on community custody are not entitled to the full protection of article I, section 7 of the Washington Constitution because they are persons that a court has sentenced to confinement but who are "'serving their time outside the prison walls.'" *Id*. (quoting *State v. Olsen*, 189 Wn.2d 118, 124-25, 399 P.3d 1141 (2017)). Thus, "it is constitutionally permissible for a [community corrections officer] to search an individual based only on a 'well-founded or reasonable suspicion of a probation

11

violation,' rather than a warrant supported by probable cause." *Id.* at 302 (quoting *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009)).

This exception, codified in RCW 9.94A.631(1), states, "'If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a [community corrections officer] may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.'" *Cornwell*, 190 Wn.2d at 304 (quoting RCW 9.94A.631(1)). Further, the offender's "privacy interest is diminished only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search." *Id.*

Mr. Hayes argues the positive UA results did not provide a sufficient nexus authorizing DOC officers to search his residence and shed.

A community corrections officer may search an offender's "person, residence, automobile or other personal property" on "reasonable cause" to believe a condition was violated. RCW 9.94A.631(1). Reasonable cause is a well-founded, articulable suspicion, and there must be a nexus between the suspected violation and the place searched. *See Cornwell*, 190 Wn.2d at 304; *State v. Jardinez*, 184 Wn. App. 518, 522, 338 P.3d 292 (2014). A nexus exists where specific facts reasonably tie the violation to the place searched. *See Cornwell*, 190 Wn.2d at 306.

Here, Mr. Hayes' positive UA results provided the DOC officers with articulable proof of a violation of his conditions of community custody, specifically the requirements

12

that he "not consume controlled substances" and "not to possess or consume [marijuana] without a valid prescription." CP at 14-15. At the time of his positive UA results, Mr. Hayes was serving a 90-day sentence on EHM, meaning his time was largely spent at his residence. The underlying convictions that resulted in Mr. Hayes' term of community custody conditions were three counts of delivery of a controlled substance; as a practical matter, that makes Mr. Hayes' home the most logical location for storing or using the substances that produced the positive UA results. Moreover, Mr. Hayes told the DOC officers they would find marijuana in his home and was overheard by a DOC officer disavowing the shed.

The underlying circumstances provide a causal link between the violation and the evidence the DOC sought to locate at Mr. Hayes' property. Such circumstances are the "nexus" that both *Cornwell* and *Jardinez* were missing. In *Cornwell*, Mr. Cornwell's violation of failure to report to the DOC did not create a sufficient nexus for the DOC officers to search his vehicle. 190 Wn.2d at 306. Similarly, in *Jardinez*, Mr. Jardinez violated the conditions of his community custody by failing to report and providing a positive UA result. 184 Wn. App. at 520. There, the court concluded that a community corrections officer's search of Mr. Jardinez' iPod lacked any connection with the violations of his community custody. *Id.*

Here, by contrast, Mr. Hayes violated the conditions of his community custody by consuming various controlled substances. It was reasonable for the DOC officers to

expect to locate controlled substances at his home given that (1) Mr. Hayes was on DOC supervision for three counts of possession of a controlled substance with intent to manufacture or deliver, (2) had provided three positive UA results over a two-week period, (3) was anchored to his home under his EHM sentence, and (4) admitted to having marijuana at his residence. Mr. Hayes' positive UA tests for the consumption of controlled substances created a commonsense nexus to his residence.

The DOC officers' decision to conduct a search of Mr. Hayes' residence and shed while he was on DOC supervision was supported by reasonable cause and a clear nexus to the suspected violations.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Murphy, J.